## BANK OF LITTLE ROCK *v.* MCCARTHY.

Decided February 20, 1892.

1. *Corporation—Directors' meeting—Notice.*

A mortgage of the property of a corporation which was executed by a majority of its directors at a meeting of which an absent director had no notice is not binding unless it was impracticable to give notice and an emergency demanded immediate execution of the instrument.

2. *How notice should be given.*

Where no mode of giving notice of a directors' meeting is provided in the by-laws or regulations of a corporation, personal notice must be given to each director; written notice to a director, left at his usual place of residence during the temporary absence therefrom of himself and family, is insufficient.

APPEAL from *Hot Spring* Circuit Court in chancery.

JAMES B. WOOD, Judge.

*W. S. McCain* and *U. M. & G. B. Rose* for appellant.

The mortgage to McCarthy & Joyce was not authorized by a proper meeting of the board of directors. One of the directors was not notified. All must have notice, or the proceedings are void. 52 Ark., 511; 14 S. W. Rep., 1101. It is true a director cannot put a stop to the corporate business by simply leaving the jurisdiction. If after reasonable search he cannot be found, the remaining directors may attend to the necessary affairs. No case of emergency is shown in the case, and neither personal service was had nor was the statute followed even by posting notices on the door of Fields' residence. See 53 Ark., 242; 2 Black, 719.

*Sanders & Watkins* and *W. L. Terry* for appellees.

It is true that in 52 Ark., 511, and 54 Ark., 58, the court decided that notice of a special meeting should be served on all the directors of the corporation. While we do not challenge the correctness of the rule, yet the service of notice and the presence of all the directors is not an absolute and indispensable pre-requisite to the exercise of corporate power by a quorum of the board; and under certain circumstances a court of equity may and will excuse the service of notice and

hold good the *bona fide* action of the quorum when otherwise
legally assembled. Mansf. Dig., sec. 969; 2 Kent, Com., p.
293; 4 Am. & Eng. Corp. Cases, 234. The power to act was
vested in a quorum of the board, and the necessity of giving
notice to all the members is a matter which may or may not
be excused, according to circumstances. 23 N. H., 569; 55
Conn., 455; 41 Ohio St., 558. Field was served with notice.
A notice was left at his residence or usual place of abode.
This was sufficient, there being no mode pointed out by
statute or by-laws. 16 Me., 186; 20 Me., 37; 1 Waterman,
Law of Corp., 206; Field on Corp., 246; Dillon on Mun.
Corp., sec. 263; 55 Conn., 455. In certain exigencies
notice may be dispensed with. See 55 Conn.; 455; 8 Ry.
& Corp. L. J., 91; Beach on Corp., sec. 282. The execu-
tion of a mortgage to secure indebtedness is "ordinary busi-
ness" of a corporation. 8 Conn., 200; 8 Ry. & Corp. L. J.,
91. The notice on Field was served in accordance with
Mansf. Dig., sec. 5206.

HEMINGWAY, J. The Bratt Lumber Company was a cor-
poration organized under the laws of this State, to conduct
a milling and lumber business. Its stockholders were J. A.
Bratt, J. H. Trump, W. H. Crawford, Leonard Bratt and C.
B. Field; the board of directors was composed of the same
persons, with J. A. Bratt as president and Field as secretary
and treasurer. About the 1st day of August, 1889, the
company owed McCarthy & Joyce about $25,000, and the
Bank of Little Rock the same sum. It was in debt to its
employees and other persons in amounts aggregating about
$6500. The Bratts and Trump live at Malvern, the princi-
pal place of business of the company; Crawford lived in
Indiana and Field resided in the city of Little Rock, where
he had an established residence and a place of business.
At that time Field left the State to be absent for awhile,
stating to Bratt, the president, that he would return in a
few days and provide means to pay the pressing debts of
the company. Field not returning in time to provide for

such demands, Bratt inquired of the person in charge of his office in Little Rock to. learn where he was, and was informed that he was stopping at the Tremont House in the city of Chicago., Bratt then went to Kansas City, where the company made sales of lumber, for the purpose of collecting the proceeds of such sales, to meet the company's liabilities ; finding that the sales were confused with sales made by other companies of which Field was an officer, and that he could collect nothing on that account, he proceeded to Chicago for the purpose of seeing Field. On his arrival he found that Field had left Chicago, and, being unable to learn his whereabouts, Bratt returned to Little Rock without having obtained the desired funds. He then applied to McCarthy & Joyce to lend him the amount needed; they declined to do so unless he would secure their old debt, as well as the sum to be loaned, by a mortgage on the company's property ; but offered to lend him $10,000 upon condition that such security be given. Bratt agreed to give the mortgage as requested, if arrangements for its execution could be made. After a conference with McCarthy & Joyce and their attorney, it was agreed that Bratt should call a meeting of the board of directors for the purpose of considering whether the company should mortgage its property to them for the purpose of securing their past indebtedness and a loan to be made of $10,000. Notices of the meeting were prepared and served on all the directors except Field. Bratt again inquired at Field's office to learn where he was, and was told that, if he was not in Chicago, the person in charge of the office did not know where he was. Accordingly, on the 29th of August, 1889, Bratt went with a notice of the meeting to Field's residence and, finding no one there, inserted it between the door and the casing, and thus left it. Field's family were then absent from the city, and the residence was unoccupied except by a man who slept there ; the notice left at his house was not received by him. On the 31st of August, a meeting of the directors was held in pursuance of the notice, all the mem-

bers being present except Field; and an order was made
by a vote of three to one in favor of making the mortgage
to McCarthy & Joyce. In pursuance thereof a mortgage
was shortly executed, covering about all of the company's
assets, for the purpose of securing the existing debt to
McCarthy & Joyce and also the sum of $10,000 to be ad-
vanced by them. On the same day, Trump, the dissentient
director, filed the complaint in this case, alleging the in-
debtedness to McCarthy & Joyce and to the bank, as well
as the execution of the mortgage; and that the affairs of
the company were being extravagantly and wastefully con-
ducted, and asking that the court appoint a receiver to take
charge of its assets and conduct its business. The com-
pany, the bank and McCarthy & Joyce were made defend-
ants, and upon an application in vacation the chancellor
granted the application for a receiver. McCarthy & Joyce
filed an answer and cross-bill, the material feature of which
was a prayer for the foreclosure of their mortgage. The
bank also filed an answer and cross-bill, the material fea-
tures of which were, allegations that the mortgage to Mc-
Carthy & Joyce was void (for the reason, among others,
that the meeting at which it was authorized was not a law-
ful meeting of the board, Field having no notice thereof and
not being present), and a prayer that the assets of the com-
pany be ratably distributed among its creditors. The as-
sets were by consent of all parties converted into money,
which was to be held in lieu thereof, subject to the determi-
nation of this cause. The cause came on to be finally heard
upon the pleadings and proofs, and the court dismissed the
cross-bill of the bank and entered a decree in accordance
with the prayer of McCarthy & Joyce. The bank ap-
pealed.

The assets realized, when sold, $25,000 in round numbers,
and, as the debts more than doubled that sum, it is evident
that the company was insolvent. There was nothing in the
articles or by-laws of the company fixing the time for regu-
lar meetings of the board of directors, and no provision for

calling special meetings.    McCarthy & Joyce advanced
nothing upon the $10,000 loan provided for in the mortgage,
and claim under the mortage a security for the past debt
only.    It does not appear that the board of directors ever
attempted to hold a meeting after the day when the mort-
gage was executed.

The two questions which we have deemed it necessary to
consider are, first, was it necessary to the validity of the di-
rectors' meeting that Field should have notice thereof? and
if so, second, was he notified?

Counsel have argued other questions with ability and learn-
ing, which merit praise and commendation.    But however in-
teresting we might find that field to which we are invited, the
demands that a crowded docket asserts upon our time for-
bid that we follow them further than is necessary to dispose
of this case.    We dismiss therefore the other matters ar-
gued, and proceed to the consideration of the questions
stated.

The statute provides that the stock, property, affairs and
business of business corporations shall be managed by not
less than three directors (Mansf. Dig., sec. 964); and, further,
that a majority of the directors, convened according to the
by-laws, shall constitute a quorum for the transaction of busi-
ness.    (Sec. 969).

1. Meeting of corporate direc-
tors without no-
tice not legal
when.

In the case of *Simon* v. *Sevier Association*, 54 Ark., 58,
the validity of a general assignment authorized by a major-
ity of the directors at a meeting of which the absent
directors had no notice was considered, and we held that
the statute authorized a majority to act only at a meeting
legally convened, and that it was essential to a legal meet-
ing that it be called in accordance with the by-laws or rules
of the corporation or upon due and legal notice given to
each of the members.    There was no contention that notice
could not have been served on each member, and no expres-
sion of the law where that was a fact.

Subsequent investigation has not altered our views as
then expressed, but we are convinced that they are in a line

with the authority of text writers and adjudged cases. If the rule were otherwise, the rights and interests of minority holders would be liable to great abuse. Even majorities might suffer; for, by absence of some of their number, the minority might become the majority, hold a meeting without notice to the absentees, and change the entire course or policy of the business, or do acts destructive to its prosperity or future existence. Such abuse of corporate power is not unknown to the history of corporations, and its evidence is found in the records of the courts. Rules intended to check or prevent it should be rigidly observed, except where reason requires that they be relaxed. The wisdom of the rule and the dangers incident to any other are very clearly stated by Judge Brewer in the case of the *Paola & Fall River R. Co. v. Comrs. of Anderson Co.*, 16 Kas., 309, where he shows that if any other rule prevailed, it would be possible, with a board composed of twelve members, for four directors to convene a meeting of seven by giving notice to three and withholding it from five others, and to bind the corporation to acts condemned by eight. That case called for no expression as to the law in cases of emergency where notice to any director was impracticable, and contains no discussion of such cases, but there is an intimation that the rule might admit exceptions in such cases.

That such cases may arise as will justify and require exceptions to be made, is a conclusion to which reflection inevitably leads. In fact, it is conceded by the learned counsel for the appellant "that a director cannot put a stop to corporate business by simply leaving its jurisdiction;" and that, "if after a reasonable search the parties are unable to find him, the remaining directors may attend to the necessary affairs." This indicates that the exception arises upon a concurrence of three conditions, first, the impracticability of notice; second, the existence of an emergency for action; and third, a reasonable necessity for the action taken.

Without committing the court to a full approval of this form of stating the exception we may say that it seems to

be substantially correct. Where notice is practicable, it must be given; it can be dispensed with, when impracticable, only to meet an emergency; and the act done must appear reasonably necessary to the welfare of the corporation. If the act is merely proper, but not necessary, or if it appear that it may become necessary, but the necessity is not present, the rule should not yield; for in such cases notice may become practicable, and the presence of the absent director be secured, before the necessity arises or the emergency is present. Such we consider the rule deducible from the case of *Chase* v. *Tuttle*, 55 Conn., 455, relied upon by the appellee. For it had been held in earlier decisions of that court that a meeting attended by a majority of the directors of which the minority had no notice was not lawful, and it does not appear that there was any intention to overrule those decisions. *Stow* v. *Wyse*, 7 Conn., 214; S. C., 18 Am. Dec., 99. The learned judge who delivered the opinion in that case says that "the exigency demanded immediate action to save the property and to save expense," and the action of the meeting was upheld upon the ground that power must be accorded the company to protect itself.

The case of *Halifax S. R. Co.* v. *Francklyn*, 8 Ry. & Corp., L. J., 91, is not before us; but, as quoted in Beach on Corp. (vol 1, p. 473), it does not seem to go as far as the last case. It is there said that a meeting to borrow money could not be held without notice to all the directors, even where some of them were in foreign countries; but a meeting to perfect debentures previously given was justified, because the action came within the ordinary business transacted by the company. We can not say with confidence, without an examination of the case, what was decided; but it seems that the act alone was regarded as within the ordinary line of the company's business, and it may be that it was considered to be such as the managing officers of the company were authorized to do without express authority from a board meeting.

The other cases cited by appellee seem to hold that, if a majority attend the meeting, notice to the minority is unnecessary. *Edgerly* v. *Emerson*, 23 N. H., 569; *Bank* v. *Flour Co.*, 41 O. St., 558.

They are cited by the text writers as against the current of authority. 1 Beach, Corp., sec. 279*n.*; 1 Morawetz, Corp., sec. 532 *n.1.* We are of the same opinion; and as they conflict with the rule announced in former decisions of this court, we cannot follow them. *School District* v. *Bennett*, 52 Ark., 511; *Simon* v. *Sevier Association*, 54 Ark., 58; *Paola & Fall River R. Co.* v. *Com'rs of Anderson Co.*, 16 Kas., 309; *Baldwin* v. *Canfield*, 26 Minn., 43; *Harding* v. *Vandewater*, 40 Cal., 77; *Chouteau Ins. Co.* v. *Holmes, admr.*, 68 Mo., 601; *Stevens* v. *Eden Meeting-house Society*, 12 Vt., 688; *Gordon* v. *Preston*, 1 Watts., 385; *Jackson* v. *Hampden*, 16 Me., 186; *Farwell* v. *Houghton Copper Works*, 8 Fed. Rep., 66; *State* v. *Ferguson*, 31 N. J. L., 107; *Pike County* v. *Rowland*, 94 Penn. St., 238; *Covert* v. *Rogers*, 38 Mich., 363.

It is next insisted that the making of a mortgage is an ordinary business act, and therefore may be authorized at a meeting of a majority of the directors, without notice to the minority.

We do not deem it necessary to enter into a discussion as to what are ordinary and what are extraordinary acts of a corporation. If by "ordinary acts" is meant such as may be done by the managing officers without authority from a board meeting, we agree that they may be ordered at a meeting of a majority without notice to the minority; but if such acts are intended as can be done only under authority from a board meeting, we cannot accept the principle as correct. For whatever requires the sanction of a meeting must be authorized by a lawful meeting, for the directors can act as a board at no other. No managing officer claimed the authority to execute the mortgage in this case, and none is shown to have existed, and it is unnecessary for us to consider whether the making of a mortgage covering

the bulk of the assets comes within the power usually con-
ferred on a general manager.

If notice can be omitted only where it is impracticable to
give it, and an emergency demands the immediate doing of
the act to be authorized, the question is, was the meeting
relied upon in this case lawful without notice to Field? The
act encumbered the bulk of the company's assets to secure
a past debt, and also a contemplated loan which was never
made. Was it necessary that the company do that act for
its protection? The question carries the answer. If we
concede that it was necessary to procure money in order to
conduct the corporate business, no necessity appears for
encumbering its assets to secure the existing debt. It is not
shown that efforts were made to borrow the requisite amount
from other persons; and, for aught that appears, if they had
been made, it could have been borrowed. If it could,
there was no necessity to make the mortgage to secure the
old debt. If it was necessary to secure the old debt in
order to borrow the sum needed, that should have been
established; for, as the mortgagees seek to bring themselves
within the exception to the rule, the burden is upon them to
prove the facts that justify an exception. Finding no ex-
igency that demanded the making of the mortgage to
secure the old debt, we are of opinion that a meeting to
authorize it could not be held without notice to Field.

There is no ground to contend that notice to him was un-
necessary because he had abandoned the office, for every-
thing indicated that his absence was temporary, and he in
fact returned the next day.

Was the notice left at his usual place of residence, at a       2. How notice
time when he and his family were absent to remain until    of directors' meeting given?
after the time fixed for the meeting, notice to him? Coun-
sel insist that it constituted notice, and to sustain their posi-
tion cite us to sec. 5206, Mansf. Dig.; but that section has
reference to notices mentioned in the code, and as notices
to directors of business corporations are not included in
such mention, we think the section inapplicable. The law

provides for no constructive notice in such cases, and in the absence of such provision notice must be personal. Such seems to be the rule established by the authorities.   1 Beach, Corp., sec. 281; *Stow* v. *Wyse*, 7 Conn., 214; S. C., 18 Am. Dec., *99*, and note, 102–3; *Covert* v. *Rogers*, 38 Mich., 363; 1 Waterman on Corp., sec. 63, p. 205; 1 Morawetz, Corp., sec. 531; *Stevens* v. *Eden Meeting-house Society*, 12 Vt., 688; *Harding* v. *Vandewater*, 40 Cal., 77.

There are statements in text-books and adjudged cases to the effect that where the director is absent notice may be left at his usual place of abode; but they either grow out of the provisions of statutes or by-laws providing for such notice, or are found in cases where the manner of giving notice was not involved, but only the question was as to the necessity for notice.

Under the first head may be cited :   1 Dillon, Mun. Corp., sec. 263, and *Lord* v. *Anoka*, 36 Minn., 176; and under the second: 1 Waterman, Corp., p. 206, and *Jackson* v. *Hampden*, 20 Me., 37.

There being nothing in our statutes or in the by-laws or regulations of the corporation providing for any other than personal notice, we think none other would answer. As a notice to Field was necessary to authorize a meeting, and as none was given, we think it was not a lawful meeting, and the mortgage was not the act of the corporation. McCarthy & Joyce were not entitled, therefore, to all the money arising from the sale, but the same should have been distributed among the creditors of the corporation in accordance with law. Judgment reversed, and cause remanded for proceedings in accordance with law.