# L. H. WHIPPLE and Others v. JOHN CHRISTIE and Others.[1]

June 6, 1913.

Nos. 18,069—(221).

**Notice of special meeting.**

The constitution of a fraternal benefit organization provided that its imperial good samaritan might call special meetings of its governing board, the imperial council, whenever he deemed proper, and notice of the time, place and purpose of such meeting should be mailed by the imperial scribe to each member of the council. The scribe refused to mail such notices after the imperial good samaritan had issued the call, had requested the scribe in writing to mail the notices, and had furnished him with signed copies of the notice. Thereupon, the imperial good samaritan mailed, in the proper place and time, a notice to each member of such council, which notice was received by each in due course of mail. Such notice so mailed and received as to contents complied fully with the constitutional requirements. *Held,* that such notice was valid and the meeting pursuant thereto was a legally called meeting of the council.

Action in the district court for St. Louis county against John Christie and others, and the Modern Samaritans, a corporation, to restrain defendant corporation and the individual defendants from interfering with certain other persons in the discharge of their duties as officers of the corporation. The case was tried upon the pleadings and stipulated facts before Dancer, J., who made findings and ordered judgment that defendants be perpetually enjoined from interfering with certain specified persons as officers of defendant corporation. From the judgment entered pursuant to the order for judgment, defendants appealed. Reversed.

*Ross & McKnight* and *Wilson & Morgan,* for appellants.
*Harris & Pearson,* for respondents.

HOLT, J.
Appeal from a judgment perpetually enjoining the defendant cor-

[1] Reported in 141 N. W. 1107.

poration and the individual defendants in their capacity as officials thereof and otherwise from recognizing certain persons as officials thereof and also from interfering with certain other persons in discharging their duties as officers of the corporation.

The defendant corporation is a domestic fraternal beneficiary association. The supreme governing body thereof is known as the imperial council, the regular meetings of which are held in June of each odd numbered year. The constitution of the association contains this provision for special meetings of the council: "Special meetings may be called by the imperial good samaritan whenever he considers it for the best interests of the order to do so, and he shall call a special meeting upon the request of a majority of the members, provided, that such a request shall state specifically the purpose of such meeting." Pursuant to a call by the imperial good samaritan, a special meeting of the imperial council was held on July 2 and 3, 1912, whereby a change in the members of the council and some of its executive officers was made which occasioned this legal proceeding to prevent such change. There is no dispute as to the facts, and it is conceded that, if the call for the special meeting mentioned was valid, then the plaintiffs are not entitled to any relief; but if invalid, the judgment rendered is right.

The stipulated and found facts contain these paragraphs: "That John Christie, the imperial good samaritan of said association, considering it for the best interests of the order to do so, did, in the month of June, 1912, sign and issue a written call for a special meeting of the imperial council of said association, to be held on July 2, 1912, setting forth in said call the time and place of said special meeting and the specific business for which said special meeting was called, and transmitted to W. A. Hicken, the imperial scribe, a sufficient number of copies of said call for all of the members of the imperial council, together with a written request to the said Hicken that he, as imperial scribe, should notify by mail all the members of the imperial council of the time, place and purpose of said meeting at least seven days prior thereto; that the said Hicken absolutely refused to send the notices; and that if said Hicken had sent such notices he would have duly mailed them at Duluth, Minnesota.

"That thereupon, the said Christie, as imperial good samaritan, sent by mail from Duluth, Minnesota, to all the members of the imperial council, a copy of the call issued by him, which said call complied with the provisions of said article V, section 2, of the constitution in substance and in form, and which contained all of the elements necessary to a proper notice under said article V, section 2, and that the said call and notice was so mailed by the said John Christie more than seven days prior to the date of the special meeting; and that every member of said imperial council actually received said notice in the due course of the mail."

It is to be observed that in the imperial good samaritan is vested the absolute right to call a special meeting of the council whenever he considers it for the best interests of the order to do so. The imperial scribe has no voice whatever in the matter. His is the mere clerical duty to mail a notice of the meeting to each member of the council. In this instance, he absolutely refused to perform this duty, though requested in writing so to do by the imperial good samaritan, and by him furnished with a sufficient number of copies of the signed call to mail one to each member of the council. In this situation is the notice of the call valid which, according to the stipulation, complied with the provisions of the constitution, was mailed at the proper place, within the specified time, and was received by every member of the imperial council in due course of mail? By the stipulation it must be admitted that the call was full and adequate in every respect to serve the purpose intended, namely, that, at the time and place specified, the members of the council were directed by the imperial good samaritan to assemble in a special meeting to consider certain stated matters. The only defect that may be pointed to is that the imperial scribe did not send the notice, or perhaps attest it by his signature. It is only by inference that the constitutional provision above set out requires the scribe's signature to calls.

We apprehend that had the scribe, without attestation or signature, mailed the call specified in the stipulation, no question could well be raised against the validity thereof, and certainly the call would have been valid if the scribe had attested it, although the mailing was done by the imperial good samaritan. All the members of the council

knew that the imperial good samaritan had the full and absolute power to issue the call, and that the scribe is a mere messenger to forward the same to the members of the council.

It is true that the court, by mandamus, can compel the scribe to perform this purely clerical or ministerial duty. But it would seem that where, as in this case, full notice of a duly-issued call has been given to everyone entitled thereto by the one solely authorized to issue it, the court should hesitate to give such effect to a wilful refusal by another official to discharge the mere ministerial duty of transmitting the same that the meeting held pursuant to the call is irregular and its proceedings void. Where the result intended by the constitutional provision is attained, courts ought not to upset the business done by a corporation, merely because some official who had no discretionary duty to perform in the matter wilfully failed in a mere clerical act. It is plain that the substance in the constitution of the defendant corporation, in respect to special meetings, is a call by the proper person, and a notice thereof to each member of the council.

We think the stipulation effectually settles the proposition that the call was duly issued, and that each member of the council, within the prescribed time, received notice thereof in substance as provided by the constitution, and given in the most effective way it could well be given, considering the wilful refusal of the scribe to transmit the notice. There is no pretense that any member of the council misunderstood the call received. The scribe can surely not raise the objection of irregular notice, and for aught that appears the other three members who did not attend the meeting are in no better position than the scribe.

That meetings of a corporation must be called by the proper authority in order to give force and legality to business there transacted is a well-recognized doctrine. 1 Bacon, Benefit Soc. & Life Ins. § 67. So also is the rule that, where the manner and time of giving notice of the meetings is prescribed, there must be a substantial compliance therewith. 10 Cyc. 324. Outside of these general propositions, we find that the cases cited and relied on by the respondents herein, with the possible exception of Kuhl v. Meyer, 42 Mo. App.

474, relate to want of authority to issue the call, a proposition not involved in the instant case. That is the situation in Reilly v. Oglebay, 25 W. Va. 36; Smith v. Dorn, 96 Cal. 73, 30 Pac. 1024; Bethany v. Sperry, 10 Conn. 200. In Riggs v. Polk County, 51 Ore. 509, 95 Pac. 5, the issue was the validity of a tax levy by a special school meeting held pursuant to a posted written call. The call so posted was not signed by the chairman of the board as the statute specifically prescribed, and the tax was held invalid. Kuhl v. Meyer, supra, relates to a special meeting of a church society having a constitution which provided that "notice of all meetings shall be given on the previous Sunday during the service." The notice of the special meeting was mailed; no attempt was made to give the notice at the previous Sunday service, and no excuse for the failure, except that the pastor was known to be opposed to the purposes of the meeting. The ·meeting so held was declared invalid.

Two decisions are found in line with our conclusion that, in giving notice of a business meeting of a corporation or managing board, minor irregularities and deviations from the strict letter of its constitution or by-laws necessitated by an unanticipated contingency, and which do not defeat or in substance affect the purpose of the enactments, do not invalidate the meeting held pursuant to such call. The one is Ashley v. Illinois, 164 Ill. 149, 45 N. E. 410, 56 Am. St. 187, where, under a provision requiring the secretary to give notice of a meeting of the board of directors, the president mailed the notices issued by him and to which he affixed, by means of a rubber stamp, the purported signature of the secretary. The notice was held good. The other decision is Bell v. Standard, 146 Cal. 699, 81 Pac. 17, in which the validity of a special meeting of the board of directors of a corporation was unsuccessfully assailed on the ground that the call and notice was signed by the vice president and not by the secretary. The vice president had the power to call the meeting. He was also secretary, but as noted did not sign the notice as such. The court [at page 705] says:

"Section 320 of the civil code provides that notice of special meetings, where no provision otherwise is made in the by-laws, must be in writing and must be given by the secretary. It does not, however,

nor do the by-laws in question prescribe any form of notice, nor require that it shall be signed by the secretary. Hence, any form or manner of written notice sufficient to inform the directors that a special meeting of the directors is called, and of the exact time and place where it is to be held will be valid. (Granger v. Original Empire, etc. Co. 59 Cal. 678, 682). Where the call is signed by an officer authorized to make it, as in this case, and contains in itself all the essential requisites of a notice, it will answer all the purposes of a notice under section 320 of the civil code aforesaid. That section merely devolves upon the secretary the duty of giving the notice." The foregoing is applicable here.

We fully appreciate the importance of a faithful observance of the constitution and by-laws of a corporation by its officers and members. The formalities prescribed for calling meetings of the corporation and its managing board must be substantially followed. But it is also important that the business and conduct of corporations should not be hampered and interrupted by some wilful refusal of an officer to perform a mere clerical duty imposed on him. If there be such refusal and the duty is, to all intents and purposes, as well performed by some other officer of the corporation, its business should not be at a standstill, unless some good reason exists therefor. A resort to mandamus to compel a recalcitrant official to perform a ministerial act is at best a slow process because of the right of appeal. We do not think the scribe's wilful refusal to mail the notices of the call, duly issued, in the case at bar sufficient to destroy the efficacy of the notice which was thereupon mailed by the imperial good samaritan himself; the notice so given complying with the constitution as herein stipulated and found.

The judgment appealed from must therefore be reversed and the case remanded with direction to amend the conclusions of law to conform with the opinion herein.

Judgment reversed.

PHILIP E. BROWN, J. (dissenting).

I dissent. Section 2 of article 5 of the defendant corporation's constitution reads as follows:

"Special meetings may be called by the imperial good samaritan

whenever he considers it for the best interests of the order to do so, and he shall call a special meeting upon the request of a majority of the members, provided, that such a request shall state specifically the purpose of such meeting.

"The imperial scribe shall notify by mail all members of the time and place of such special meeting at least seven days prior thereto, and also the specific business for which such meeting is called, and no other business shall be transacted except that stated in such notice."

It is manifest that under these provisions the scribe has no duty to perform in connection with the making of the call; and it seems equally as clear that the imperial good samaritan has nothing to do with notifying the members of the imperial council, that is, the directors, of the time and place of and the specific business to be done at the meeting. As to the latter it is the duty of the scribe, and of no one else, (1) to "notify by mail all members of the time and place of such special meeting at least seven days prior thereto," and (2) to advise them, within such time and in the same manner, of the specific business for which the meeting is called; and transaction of business other than that stated in the notice is prohibited.

It is elementary that the provision quoted, being contained in the constitution of the order, became a part of the contract between it and all members (Kuhl v. Meyer, 42 Mo. App. 474, 479) and likewise that, as a general rule, the same would have to be at least substantially complied with, in order to constitute a legal meeting of the council, subject, of course to the doctrine of acquiescence and waiver. See 2 Thompson, Comm. on Corp. §§ 1140, 1146, 1147. Since, therefore, it is admitted that three members of the council, and also the scribe, though receiving the notice sent by the imperial good samaritan, failed to attend, and that the scribe gave no notice of the meeting, and assuming, as is conceded that, aside from the question of authority to give the notice, the contents of the copy of the call sent out by the imperial good samaritan was sufficient to constitute due notice, the only question presented is: Was there a sufficient compliance with the constitution of the order in the matter of notice to the members of the special meeting? The mere matter of

who performed the physical act of mailing is deemed unworthy of consideration.

. First, then, as to the importance of notice:

In Bank v. McCarthy, 55 Ark. 473, 18 S. W. 759, 29 Am. St. 60, the court, in discussing the essentiality of compliance with the rules of a corporation to the legality of a director's meeting, and after adverting to a previous case in that court holding that a statute of the state authorized the directors to act only at a meeting legally convened in accordance with the by-laws or rules of the corporation, or upon due and legal notice given to each of the members, said, at page 477: [1]

"Subsequent investigation has not altered our views as then expressed, but we are convinced that they are in a line with the authority of text writers and adjudged cases. If the rule were otherwise, the rights and interests of minority holders would be liable to great abuse. Even majorities might suffer; for, by absence of some of their number, the minority might become the majority, hold a meeting without notice to the absentees, and change the entire course or policy of the business, or do acts destructive to its prosperity or future existence. Such abuse of corporate power is not unknown to the history of corporations, and its evidence is found in the records of the courts. Rules intended to check or prevent it should be rigidly observed, except where reason requires that they be relaxed."

The books contain numerous like expressions of the rule, of which see Singer v. Salt Lake, 17 Utah, 142, 161, et seq., 53 Pac. 1024, 70 Am. St. 773, where this matter is discussed at length.

Next, as to the form and manner of giving the notice, said Mr. Seymour D. Thompson, in 10 Cyc. 324, 325:

"Where the time or manner of giving notice is prescribed by statute, by the charter, or by the by-laws of a corporation, it is necessary, in order to the validity of the acts done at the meeting, that the notice should be given as thus prescribed. * * * The requisites of the notice may be enumerated as follows: (1) It must be issued by one who has authority to issue it. (2) It must state the

---

[1] [18 S. W. 761].

time of the meeting  \*  \*  \*  (3) The place where the meeting is to be held  \*  \*  \*  (4) The business to be transacted thereat."

The rule as thus formulated is stated with reference to stockholders' meetings, but applies equally to those of directors. See **10 Cyc.** 784. See also 26 Am. & Eng. Enc. (2d ed.) 990, 992. To this general rule some courts have formulated exceptions which, as stated in Bank v. McCarthy, supra, 478, arise "upon a concurrence of three conditions, first, the impracticability of notice; second, the existence of an emergency for action; and third, a reasonable necessity for the action taken." In this connection, however, the court carefully outlined the limits of the operation of the exceptional rule indicated, as follows:

"Without committing the court to a full approval of this form of stating the exception we may say that it seems to be substantially correct. Where notice is practicable, it must be given; it can be dispensed with, when impracticable, only to meet an emergency; and the act done must appear reasonably necessary to the welfare of the corporation. If the act is merely proper, but not necessary, or if it appear that it may become necessary, but the necessity is not present, the rule should not yield; for in such cases notice may become practicable, and the presence of the absent director be secured, before the necessity arises or the emergency is present."

In other words, the exception rests upon necessity growing out of emergency, and not upon the caprice of corporate officers. No claim is made, or can be made under the facts in this case, that there was any impracticability of giving notice or any emergency for action, or any necessity for the course taken, except the scribe's refusal to send out the notices. The business sought to be considered at the meeting referred only to the internal affairs of the corporation, and no rights of third parties are involved. In short, there is no evidence in the record of the existence of any emergency for action save the refusal of the scribe to perform his duties, and none that the act done was "reasonably necessary to the welfare of the corporation." Furthermore, there is no occasion here to invoke the rule of necessity, in view of R. L. 1905, § 3171, subd. 8, to which further reference will be made in the course of this discussion.

122 M.—6.

The claim of the defendants must, therefore, rest upon the proposition that where, in any case, the officer of this corporation designated as the imperial scribe refuses to give notices of special meetings of the council, the imperial good samaritan may do so in own name and capacity as such, and this without informing the members of the reason for this extraordinary action. Such is the effect of the majority opinion. Two cases are cited as sustaining this conclusion, namely, Ashley v. Illinois, 164 Ill. 149, 45 N. E. 412, 56 Am. St. 187, and Bell v. Standard, 146 Cal. 699, 81 Pac. 17.

With due respect to the opinions of my colleagues, it is submitted that the Illinois case is not in point. It concerned the foreclosure of a mortgage given by the corporation for a large sum to a third person. On page 152 of the opinion it is stated that "the only question in the case is whether the note and mortgage were binding obligations of the Ashley Wire Company," the appellant. In other words, this case involved the effect of irregularities in connection with the calling of the meeting at which the mortgage was authorized, one of which defects was that the name of the secretary, whose duty it was to give notice of the call, was affixed thereto by the president by the use of a rubber stamp. It was held that the mortgage was valid, but the decision was grounded squarely upon the doctrines of estoppel and ratification, and upon the proposition that third parties will be protected as against irregularities in compliance with "rules and regulations enacted for the internal management of the corporate affairs" (pp. 156–158).

"It certainly made no difference to anybody," said the court at page 158, "who held the rubber stamp, and if the secretary did not know when it was done, he attended the meeting, acted as secretary, recorded its proceedings and treated it as regularly called and its directions as binding on him. He ratified the call, and it affected nobody, in any view of the question."

It is is to be noted, furthermore, that the notice in that case was not only regular on its face, but also purported to be signed by the secretary, which latter fact involves what appears to the writer to be of the essence of the charter requirement as to notice of the instant case.

In the California case the notice was in due form, except that it purported to be signed by the vice president as such, instead of as secretary, which latter office he also held, and it may be that the notice was properly held valid as in fact emanating from the officer known to have due authority to issue it. The court, however, after stating that its code provided that notice of special meetings, when no provision otherwise is made in the by-laws, must be in writing and must be given by the secretary, observed, at page 705:

"It does not, however, nor do the by-laws in question, prescribe any form of notice, nor require that it shall be signed by the secretary. Hence, any form or manner of written notice sufficient to inform the directors that a special meeting of the directors is called, and of the exact time and place where it is to be held, will be valid. (Granger v. Original Empire, etc. Co. 59 Cal. 678, 682). Where the call is signed by an officer authorized to make it, as in this case, and contains in itself all the essential requisites of a notice, it will answer all the purposes of a notice under section 320 of the civil code aforesaid. That section merely devolves upon the secretary the duty of giving the notice. To give a written notice is not to write or sign the paper expressing the information constituting notice. It implies only that the person charged with that duty shall by some means see to it that the necessary notice is delivered to the person who is to receive it. It is the equivalent of the service of papers, and involves only a delivery of sufficient notice to the proper person. This duty Taylor, as secretary, performed when he mailed the notices in question to each director, properly addressed and postpaid."

It is apparent from this language that the court had in mind throughout its somewhat elaborate statement of the rule, the facts that the person who gave the notice was in fact authorized so to do, and that this was apparent from the notice itself, or at least known to the recipients thereof; but the rule is so loosely worded that, if taken literally, it would dispense with the prime essential of notice, namely, the giving of *authentic* advice to the person affected that some act is to be done, so that it might be invoked to sustain the proposition that any writing stating the act to be done, and mailed, no matter by whom, would be held sufficient. It is useless as a workable

rule. Contrast it with the practical observations of this court in Bausman v. Kelley, 38 Minn. 197, 205, 36 N. W. 333, 335, 8 Am. St. 661.

"Again," said Mr. Justice Dickinson, in referring to a notice of foreclosure by advertisement, where the mortgagee was dead, "the notice was not, upon its face, and did not purport to be, the act of Galusha (the attorney for an alleged assignee of the mortgage), but of Hall, the mortgagee. It is an essential quality of a notice that it appear to be given by competent authority—Niles v. Ransford, 1 Mich. 338, [51 Am. Dec. 95] ; Roche v. Farnsworth, 106 Mass. 509 —and a notice which, upon its face, is declared to be the act of a designated person, and which, as such, would be void, cannot be made effectual by proof that it was really the act of another and undisclosed person, not even standing in a relation of privity with the person in whose name the notice was given. A notice by a mere stranger can effect nothing."

These are a few cases specifically dealing with the precise question in hand; but, as far as I have been able to ascertain, all of them, excepting possibly the California case above referred to, apply the doctrine of notice as stated in Bausman v. Kelley, supra, to notices of corporate meetings, and sustain the proposition that such a notice must at least purport to be given by the duly constituted authority. See Kulinski v. Dambrowski, 29 Wis. 109, 113, 114; Johnston v. Jones, 23 N. J. Eq. 216, 228; Riggs v. Polk County, 51 Ore. 509, 516, 95 Pac. 5; Bethany v. Sperry, 10 Conn. 200, 201, 207. See also 10 Cyc. 324, 784; 26 Am. & Eng. Enc. (2d ed.) 992.

In the Wisconsin case cited it was declared that "the certificate introduced in evidence did not show that the notice of the time and place where the election would be held was given by any person authorized," and it was "of the substance of the proceeding that the election be publicly notified by a person having authority under the statute."

In the New Jersey case it was said: "The notice did not purport to be given by the directors or their authority. It was a notice by three individuals, without any designation affixed to their names. No stockholder need regard it. Something should have been added

to show that it was by proper authority." In the Oregon case the notice was loosely spoken of as the call; but an examination of the case clearly shows that the meeting was duly resolved upon, that is, it was called, but was held invalid because the notice designed to put the call into effect was not signed by the "chairman of the board," as directed by statute, but by the clerk "pro tem."

And in Reilly v. Oglebay, 25 W. Va. 36, 41, it was declared that notice which is not such as required by statute is no notice. The reason for this rule is well stated in Troy v. White, 10 S. D. 475, 482, 74 N. W. 236, 42 L.R.A. 549, where the statutory direction as to the mode of giving notice of a directors' meeting was held mandatory.

It should be remembered that the call and the notice are separate and distinct requisites of the validity of the meeting, the call being the resolution or determination to hold the meeting, and the notice being the method of enforcing or promulgating the call. Both are required in order to constitute a legal meeting; and as a general rule, at least, it would seem that the considerations determinative of the validity of the one should control as to that of the other. See 26 Am. & Eng. Enc. (2d ed.) 990.

Nor does it seem, in view of the two provisions of the charter involved in this case, which are quoted at the outset of this dissent, that the duties thereby prescribed can be regarded otherwise than as mutually independent, or that the duty of the scribe can be deemed, as stated in the majority opinion, to be merely to "mail a notice of the meeting to each member." Taken literally, the second paragraph of section 2, article 5, of the order's constitution, would require the scribe himself to give the notice; and it is difficult to perceive any sound reason why the notice should not at least purport to be authentic, that is, show on its face that it emanates from the proper officer. Why should an alleged notice be held good, when its validity depends upon collateral facts, not disclosed therein, and of which, in the nature of things, the person to whom it is sent must often be ignorant? Must a director heed such a notice at his peril, when he knows that it was not issued in accordance with the rules of the corporation whose interests he is bound to guard and especially when

neither it, nor any accompanying document, advises him why the fundamental law of the order has been deviated from? More specifically, should the head of this order be allowed, at his pleasure, to send out copies of the call in lieu of the regularly prescribed notice, and require the directors to attend for the purpose of first ascertaining the validity of the gathering before proceeding with the business for which it is called? It seems unfortunate, when courts are striving to keep ever multiplying corporations within reasonable bounds and to protect the interests of minority stockholders, that any relaxation of the established rules should be permitted. The result of this case tends to throw the question of the validity of corporate meetings into confusion. If the fundamental law of this order provided, as is often the case, that the failure of a director to attend a duly-called meeting without adequate cause should subject him to amotion, would it be held that such action could be taken under the state of facts here existing? I think not. How then can it be held that this was a valid meeting? At least as between the members of the order, it must be either valid or invalid for all purposes.

It may be asked, what is to become of the ordinary affairs of the corporation in the event of the death or disability of the secretary—in this case the scribe—or if he again refuses to act? And it may be conceded that mandamus is not an altogether adequate remedy in the latter case. Nevertheless, the answer to the whole question may, I think, be found in R. L. 1905, § 3171, which, in my opinion, renders the conclusion reached by the majority opinion, unnecessary. This section provides:

"In any case affecting a corporation the district court may: * * * 8. Cause a meeting of its managing board, stockholders, or members to be held when deemed necessary for the preservation of its property or protection of its interests."

This provision is referred to in State v. DeGroat, 109 Minn. 168, 176, 123 N. W. 417, 134 Am. St. 764. No reason is perceived why this statute does not afford an ample basis for a speedy and adequate remedy covering all the contingencies referred to, and which could be worked out by an ex parte application showing the facts.

. In my opinion the imperial good samaritan should have obtained

authority before assuming to act in a matter in which he had none; and I think, therefore, that the judgment appealed from should be affirmed. The importance of the question involved is the apology for this over-long dissent.