*1256 OPINION

Per Curiam:

Pursuant to the bylaws of respondent Sunrise Villas VIII Homeowners Association (the Association), the Association’s board of directors had a duty to hold an annual meeting of the Association’s membership for the purpose of electing the Association’s board of directors on December 7, 1993. However, this meeting was not held on the scheduled date. Consequently, appellant William Eversole and other members of the Association attempted to call a special meeting to elect a new board of directors. Eversole and the other members secured proxies, which contained requests to hold a special meeting to elect new directors, from forty-one percent of the Association’s membership. A written request to hold a special meeting was then delivered to the Association’s president and secretary.
Article I, Sections 8 and 9 of the Association’s bylaws provide for the calling and notice of special meetings as follows:
Section 8. SPECIAL MEETINGS, HOW CALLED
Special meetings of the membership for any purpose or purposes may be called by the President or Secretary, upon a request in writing therefor, stating the purpose or purposes thereof, delivered to the President or Secretary, signed by the President or any two directors, or by members representing at least forty percent (40%) of the voting power in the corporation, or by resolution of the directors.
(Emphasis added.)
Section 9. NOTICE OF MEMBERSHIP MEETINGS
Written or printed notice, stating the place and time of the meeting, and the general nature of the business to be considered, shall be given by the Secretary to each member entitled to vote thereat at his last known post office address, not less than ten (10) nor more than sixty (60) days before the meeting.
(Emphasis added.) In addition, Article III, Section 4 of the bylaws provides that the secretary “shall attend to the giving and serving of all notices to the members and directors and other notices required by law.”
*1257 The Association’s leadership did not honor the request to call a special meeting. In response, Eversole and the other members took it upon themselves to give notice to the membership that a special meeting would be held on February 17, 1994. Eversole reserved the hall where the meeting was to be held with his personal check. The meeting was held, and an election was conducted wherein Eversole and the other members were installed as the new board of directors.
The Association filed a complaint in district court against Eversole and these other members (the defendants) alleging that they had attempted to oust the Association’s board of directors and had conducted a spurious election in violation of the Association’s bylaws. The Association sought a temporary restraining order, as well as preliminary and permanent injunctive relief, to enjoin the defendants from acting as directors. The complaint also prayed for a declaration confirming the composition of the board of directors. Finally, the Association sought damages, including attorney fees and costs.
Before answers were filed, an in-chambers conference was held. In that conference, counsel for the defendants and the Association agreed that a new election would be held by a master and that the status quo would be maintained in the interim. The lower court entered an order reflecting this agreement.
Pursuant to the court’s order, an election was held on March 9, 1994, and the directors whom the defendants had opposed were retained in office. The district court later confirmed the results of the election.
A status hearing was subsequently held, and the district judge clearly indicated that he felt the case was moot. The judge stated that Eversole and the other defendants should not file answers or take any further action and he would not assess any fees against them. When the attorney for the Association asked about attorney fees, the district judge indicated he might assess fees against the Association but not against the individual defendants. In talking to a defendant other than Eversole, the judge explained:
In other words, if you don’t answer this complaint nothing is going to happen to you. You’re not going to have any money taken out of your pocket. Is that correct, Miss Higbee [attorney for Association]?
And later he told the Association’s attorney:
And if you want extra money from Mr. Eversole or this man you better notify them. I’m not prone to give it to them. I don’t want to take money out of your pocket. As long as you let it lie. But if you keep on filing motions or whatever it is and if they win and prevail you’re going to have to pay. All *1258 right? But as of right now I very seriously doubt that I’m going to award them attorney fees that you have to pay or you have to pay personally. I very seriously doubt I’m going to do that right now. All right? Even if they file a motion. I’m going to have to give them some money to be paid out of the Sunrise Villas Association fund, but we’ll take that up at a later time.
About a month thereafter, the Association served the defendants with a notice of intent to default. Since Eversole’s attorney had withdrawn, he retained another attorney who advised him to file an answer, and that was done. A default was entered against the other defendants.
The Association then filed a motion, with points and authorities, for entry of final judgment, including attorney fees and costs. Eversole filed opposition and reply points and authorities thereafter and the Association filed its reply. A hearing on the motion was held.
The district court subsequently entered its findings of fact, conclusions of law and judgment. The court concluded that the election conducted by the defendants violated the Association’s bylaws and that the Association was entitled to attorney fees under NRS 116.4117. The court ordered Eversole to pay the Association $5,563.20 in attorney fees, one-half the attorney fees alleged to have been incurred by the Association in prosecuting and defending the action. The court further adjudged that the Association’s claims for injunctive and declaratory relief had been rendered moot by the new election held by the master.
Eversole later filed a motion to amend the court’s findings, conclusions and judgment. After a hearing, the court denied the motion.
Eversole now appeals the award of attorney fees claiming that the parties’ stipulation incorporated in the lower court’s order maintaining the status quo operated to preclude the district court from determining the impropriety of the special election, the lower court erred in awarding the Association attorney fees as there were genuine issues of material fact which required a trial, the lower court was estopped from awarding attorney fees when it induced Eversole and the other defendants to sit on their rights, and the attorney fees that were assessed were fatally flawed and should have been adjusted by the lower court.
The Association asks this court to conclude that Eversole’s appeal is frivolous and seeks double costs and attorney fees incurred.
The critical legal issue is whether the bylaws permitted forty percent of the Association to call a special meeting to elect new *1259 officers when the president and secretary refused to take such action as required by the bylaws. The Association bylaws require that the annual meeting be called in December each year by the president and secretary. The bylaws also provide that special meetings “may be called by the President and Secretary ... or by members representing at least 40% of the voting power . . . .”
The Association claims that although forty percent of the members called the special meeting to elect new officers and directors, such notice and meeting were ineffective because they were not done by the president and secretary. The district court agreed and entered this conclusion as part of its final judgment.
Several cases have come to a result contrary to the district court and seem to provide a more reasonable, less legalistic solution to organizational stalemate. In Whipple v. Christie, 141 N.W. 1107 (Minn. 1913), the constitution of a fraternal order provided that its head executive officer had authority to call special meetings and that the order’s scribe was to mail notice of such meetings to members of the order’s council. The executive officer called for a special meeting, the scribe refused to send out notices of the meeting, and the executive officer mailed the notices himself. The court considered whether the notice of the call was valid. The notice “complied with the provisions of the constitution, was mailed at the proper place, within the specified time, and was received by every member” of the council; “[t]he only defect that may be pointed to is that the Imperial Scribe did not send the notice.” Id. at 1108. But the scribe had “the mere clerical duty” to mail the notice of the meeting. Id. The court concluded that
in giving notice of a business meeting of a corporation or a managing board, minor irregularities and deviations from the strict letter of its constitution or by-laws, necessitated by an unanticipated contingency, and which do not defeat or in substance affect the purpose of the enactments, do not invalidate the meeting held pursuant to such call.
Id. at 1109. The court rejected the argument that the executive officer’s only remedy was to seek a court order, reasoning that
the business and conduct of corporations should not be hampered and interrupted by some willful refusal of an officer to perform a mere clerical duty imposed on him. If there be such refusal, and the duty is to all intents and purposes as well performed by some other officer of the corporation, its business should not be at a standstill unless some good reason exists therefor. A resort to mandamus to compel a recalcitrant official to perform a ministerial act is at best a slow process, because of the right of appeal.
*1260 Id.; see also Talton v. Behncke, 199 F.2d 471, 474 (7th Cir. 1952) (“Defendant’s plea that the meeting should have been called by the president is of no avail, for, having been asked to call it and having refused and having attempted to prevent the directors from attending, he has effectually barred himself from questioning the effectiveness of the call by other authorized officers under the Constitution and By-Laws.”); Cullum v. Board of Education of North Bergen Tp., 104 A.2d 641, 644 (N.J. 1954) (where a board of education rule required the board secretary to call a special meeting upon the request of three board members, the board members “had the clear right to perform the ministerial act of serving the notice” when the secretary was unavailable; “[t]he vital thing was not the presence of the secretary’s signature but the service of the notice in due and reasonable time”).
Permitting a substantial minority to call a special meeting when the elected officers or directors cannot or will not act is a safety provision empowering a substantial minority to bring an issue before the Association or take necessary action. There is no reason why a special vote called by forty percent[1] of the members cannot be used to call an annual meeting that was the responsibility of the president and secretary to call. Requiring the minority to go to court to compel the president and secretary to call the special meeting when a specific remedy is already provided in the bylaws seems a waste of precious Association and judicial resources and to exalt form over substance. Contractual provisions should be harmonized whenever possible, Royal Indem. Co. v. Special Serv., 82 Nev. 148, 151, 413 P.2d 500, 502 (1966), and construed to reach a reasonable solution. Fisher Properties v. Arden-Mayfair, Inc., 726 P.2d 8, 15 (Wash. 1986). If forty percent did indeed call the special meeting, it was valid and done pursuant to the bylaws of the Association.
It is also perplexing why Eversole was assessed attorney fees when the district court gave a clear indication that attorney fees and costs would not be assessed against any of the individual defendants, but rather against the Association, as long as the defendants took no further action in the case. The Association *1261 made it impossible for Eversole to do this because it served him with a notice of intent to default, and his attorney properly advised him to file an answer. This action was followed by the Association’s motion for final judgment and attorney fees. Eversole opposed the Association’s motion for final judgment, but contrary to its prior indication, the district court entered judgment against the defendants and assessed Eversole half the attorney fees of $11,126.40.
Just as the Association began the controversy by failing to call the annual meeting, the Association’s attorneys forced Eversole to act when the district court had indicated it wanted the opposite conduct from Eversole.

CONCLUSION

When the secretary and president of the Association failed to discharge their responsibilities to call an annual meeting, Eversole and the other homeowners were empowered, pursuant to the bylaws, to call a special meeting for that purpose. Since Eversole acted properly and should have been the prevailing party in this litigation, no attorney fees or costs should have been assessed against him. Any attorney fees are the responsibility of the Association to pay. Accordingly, we reverse the judgment of the district court and remand this case for entry of judgment in Eversole’s favor.

This percentage is much higher than that now permitted by the Legislature. NRS 116.3108(1) provides that special meetings of a unit-owners’ association may be called “by units’ owners having 20 percent, or any lower percentage specified in the bylaws, of the votes in the association.” (Emphasis added.) Apparently, Sunrise Villas pre-existed enactment of NRS Chapter 116 so this provision does not apply to this case. See NRS 116.1201, 116.1204.