**PDM STROCAL, INC., Plaintiff—Appellee,**

v.

**FIREMAN'S FUND INSURANCE COMPANY; J.A. Jones Construction Company, Defendants—Appellants.**

No. 02–16040.

D.C. No. CV–00–01232–JLQ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2003.

Decided Aug. 12, 2003.

Before HUG, GIBSON,* and FISHER, Circuit Judges.

MEMORANDUM**

J.A. Jones Construction Company, the design-build general contractor on the fed-

---

* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

eral courthouse construction project in Las Vegas, Nevada, and Fireman's Fund Insurance Company (collectively referred to as "Jones"), appeal a portion of the district court's $1.3 million judgment in favor of subcontractor, PDM Strocal, Inc. ("Strocal"). Because the parties are familiar with the facts, we recount them only as necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

On appeal, Jones contends that the district court erred by not addressing the provision set forth in paragraph 8, subparagraph 2 of Schedule F of the subcontract, which addressed the pricing for changes not initiated by the owner. Additionally, Jones argues the district court erred by relying on conduct concerning changes that were not in dispute. Further, Jones argues the district court erred by awarding a *quantum meruit* recovery based on unit rates in the subcontract.

A large portion of the district court trial was devoted to determining the appropriate amount of compensation that Strocal should be awarded for the additional material and work arising from the numerous design changes that took place after the Notice to Proceed. In making its determination, the district court found that the labor rates included in Schedule A of the subcontract for "changes to the design were intended to be used to price additional work that resulted from the multiple design changes."

The subcontract contains various provisions that refer to how compensation should be handled with regard to changes to the design. The district court focused on Article 8 of the subcontract and paragraph I of Schedule A. The court also looked at the conduct of the parties in their handling of Strocal's first few payment requests for extra work. In doing so, the court determined that Strocal was entitled to recovery and that the rates provided in Schedule A covered any change orders that were made.

"Changes" are addressed in Article 8 of the subcontract. That provision specifies that if changes are made by the Architect or Owner the change in price will be made in accordance with "the applicable provisions of the Contract; otherwise, on an agreed or equitable basis."

In addition to Article 8, paragraph I of Schedule A, titled "Additive Design Changes/Unit Prices," also addresses changes to the contract. This paragraph applies to "any change[s]" and sets forth fixed labor rates which are to be used to calculate the cost conditions affected by changes to the design or magnitude of scope of the project.

Additionally, paragraph 8, subparagraph 2 of Schedule F, addresses the pricing of change order work. Although the district court did not specifically mention this provision in its decision, we conclude that even when the provision is considered, the ultimate conclusion remains the same.

Jones argues that because paragraph 8, subparagraph 2 of Schedule F specifies it is applicable when determining the cost of changes which are not "owner initiated," this is the only clause that applies to non-owner initiated changes. Further, Jones asserts that the pricing provision in Schedule A does not apply to the changes at issue in this lawsuit. We reject this argument.

"A court should not interpret a contract so as to make meaningless its provisions." *Musser v. Bank of Am.*, 114 Nev. 945, 964 P.2d 51, 54 (1998) (quotation marks and citations omitted). A basic tenet of contract interpretation is that "every word must be given effect if at all possible." *Id.* Additionally, "[c]ontractual provisions should be harmonized whenever possible ... and construed to reach a reasonable

solution." *Eversole v. Sunrise Villas VIII Homeowners Ass'n,* 112 Nev. 1255, 925 P.2d 505, 509 (1996) (internal citations omitted).

Although paragraph 8, subparagraph 2 of Schedule F applies only to non-owner initiated changes, it is not clear that this is the only clause applicable to such changes. Furthermore, this clause may be read harmoniously with paragraph I of Schedule A, upon which the district court relied.

When reading paragraph 8, subparagraph 2 of Schedule F in conjunction with the other relevant change provisions in the contract, it is necessary to determine the meaning of the term "at cost." While Schedule F indicates that non-owner initiated changes will be performed at cost, Schedule A explains that cost conditions affected by *any* changes to the design or magnitude of scope of the project will be analyzed using the fixed labor rates specified therein. Because "specific terms and exact terms are given greater weight than general language," Restatement (Second) of Contracts § 203(c), we conclude that it is necessary to refer to paragraph I of Schedule A to determine the cost of any changes, including non-owner initiated changes.

Despite the district court's failure to specifically identify Schedule F, paragraph 8, subparagraph 2, in its decision, when considering the clause in conjunction with the contract as a whole, the result is the same. Schedule A applies to all changes, and thus, the district court correctly determined the amount of the judgment.

Because we conclude that the rates in Schedule A apply to "any change" we need not resolve whether it was proper for the district court to look at the owner-initiated change orders. Further, because the dis-

trict court did not use *quantum meruit* analysis in determining the labor rates, but rather correctly used the rates specified in Schedule A, paragraph I, we need not address Jones's argument that the district court incorrectly used *quantum meruit* analysis.

AFFIRMED.