## Board of Education of Wurtland Independent School District et al. v. Stevens et al.

(Decided Nov. 26, 1935.)

DYSARD & TINSLEY and JAMES R. SOWARDS for appellants.

JOHN F. COLDIRON and THOMAS E. NICKEL for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Pursuant to a called meeting of the members of the Wurtland independent board of education, on December 21, 1934, the board passed a resolution proposing a merger of the Wurtland independent graded school district, and to come under the jurisdiction of the latter as provided in section 4399-4 of the Kentucky Statutes Supplement 1934, the merger to become effective when concurred in by the Greenup county board of education, with the proviso that, the Greenup county board would establish and maintain a four-year high school at Wurtland as long as three years from July 1, 1935. On December 22, 1934, the members of the Greenup county board of education met and accepted the merger as proposed by the Wurtland graded school district, as above indicated, and passed a resolution or order consummating the merger of the two school districts.

The plaintiffs, as citizens, patrons, and taxpayers of the Wurtland independent school district, brought this suit against the defendants, who were the then present members of the board of education of said school district, and the members of the board of education of Greenup county, Ky., seeking an injunction restraining the two boards from carrying into effect the proposed merger.

By subsequent pleadings, the issues were made and the evidence taken, and upon trial of the case the court entered judgment in favor of the plaintiffs adjudging void the action of the two boards, and enjoined them from carrying out the proposed merger, and to reverse that judgment this appeal is brought.

The right and authority of the respective boards of education to merge the two school districts as provided by the statute, supra, is not denied.

The pertinent issues relate (1) to the character and time of notice of the meeting given the members of the

board of the Wurtland independent school district, and (2) whether or not Alfred Maggard, who did not attend the meeting of the Wurtland district board held December 21st, was a trustee of that district, or whether he had vacated his office by abandonment under section 4399-99 of the Ky. Stats. Supp. 1934, which in part reads:

> "Any board member failing to attend three consecutive regular meetings, unless excused by the board for reason satisfactory to it, shall be deemed to have vacated his office of board member."

We will discuss these questions in reverse order.

(2) All members of the board of the Wurtland district, including Maggard, were notified of the meeting, and all attended except Maggard. It is the contention of the appellant that it is immaterial whether or not the notice given Maggard was sufficient, or whether he was notified at all, since he had abandoned and vacated his office by failing to attend three consecutive regular meetings, which ipso facto vacated his office, although no action had been taken by the board with respect thereto, and no vacancy had been declared. It is insisted that the statute is self-executing, and no action of the board was necessary.

We are unable to accept the view that the statute is self-executing and that Maggard's failure to attend the meetings of the board ipso facto vacated his office without some action having been taken by the board. This same or similar question was decided by this court in the case of Commonwealth ex rel. Steller et al. v. Livingston et al., 171 Ky. 52, 186 S. W. 916, 918, construing section 3744 of the Kentucky Statutes, which is as follows:

> "The acceptance by one in office of another office, or employment incompatible to the one he holds, shall operate to vacate the first."

In the case, supra, one Herman was a city commissioner and accepted appointment to the office of city engineer, which, of course, was incompatible with the office of commissioner. The question arose as to whether or not his acceptance of the incompatible office ipso facto vacated his office of commissioner without any action having been taken by the mayor and city com-

missioners. It was argued, as is here argued, that his acceptance of the incompatible office ipso facto forfeited the former one, and in rejecting the argument, the court said:

"But we do not find ourselves able to agree that this view of the law is applicable in a case like this. We do not think that the mayor and commissioners under the averments of the petition would have the authority to declare the office vacant and proceed to fill the vacancy without giving Herman some notice of their contemplated action and an opportunity to be heard in his own behalf, or unless his office had been declared vacant in a judicial proceeding to which he was a party.

"Every person who has been lawfully put in possession of a public office is entitled to notice and an opportunity to be heard before he can be ousted. It might often result in great injustice if a municipal body could summarily declare the office of one of its members vacant without giving him notice and opportunity to be heard, and, besides, a practice like this would be contrary to a fundamental principle that is found running all through the law, that no person shall be deprived of any place to which he has been duly elected or appointed, or of the emoluments of office to which he is entitled, or of property to which he asserts claim, or other valuable right, without a hearing."

See, also, to the same effect, 56 C. J., p. 324, 325, secs. 194, 195.

The statute does not expressly provide that the board shall take any action to declare a vacancy for the failure of one of its members to attend its meetings, but the statute uses language from which it may be inferred that some action on part of the board is contemplated. The statute (sec. 4399-29) says: "Unless excused by the board for reason satisfactory to it." It may be inferred from this language that it was contemplated that the delinquent should be given an opportunity to explain or offer his reasons for his failure to attend the meetings. The statute and other authorities cited impel us to the conclusion that Maggard had not forfeited his office.

We now come to a consideration of the question of notice. It appears that on the evening of December

20, 1934, James Akers, chairman of the board of the Wurtland district, told Mrs. Nellie Srafford, secretary of the board, to notify all of the members of the board that there was a meeting called at 6 o'clock p. m. on December 21st, for the purpose stated above. On the evening of December 21st, Mrs. Srafford went to the respective homes or the places of business of each member of the board and told them that the chairman had called a meeting of the board to convene at 6 o'clock on that afternoon, and informed them that the purpose of the meeting was to consider the merger of the Wurtland school district with the Greenup county district. It appears that she reached the home of Mr. Maggard about 5:45 o'clock, and upon conveying the notice or message to him, he said he would attend the meeting. It will be noticed that this was about 15 minutes before the meeting was supposed to convene, and, ordinarily this would indeed be a very short time of notice. But as to whether or not it was reasonable time, under the circumstances of this case, may be determined by Maggard's own testimony, as follows:

"Q. Were you asked to attend the board meeting that night? A. Yes, sir.

"Q. Did you attend it? A. No, sir.

"Q. Were you given any word as to what the purpose of the meeting was? A. Yes, sir.

"Q. What was to be the purpose of the meeting as informed by her [meaning Mrs. Srafford]? A. She said the board was to meet with the county superintendent, Mr. Fred Maynard, I believe, and they were to discuss the plans for the merger with the Greenup County Schools.

"Q. What did you say to her about that? A. I told her I would be there at the meeting.

"Q. Did you go? A. No, sir; I didn't. I changed my mind afterwards and didn't go.

"Q. Why didn't you go? A. Not for any particular reason. I hadn't been attending the meetings. I might say for lack of interest."

Had Mr. Maggard offered any protest with reference to time of notice, a different question might be presented. In view of his own testimony, there is no escape from the conclusion that he had reasonable time

and opportunity to attend the meeting, which he failed to do, "for lack of interest." It is argued that this was a public question, and the public had an interest therein, all of which is true; but, it must not be overlooked that the members of the board are agents or representatives of the public, and it happened to be unfortunate in having a representative who failed to look after its interest for no reason other than lack of interest.

The further argument for appellees is that while the statute does not expressly require notice of a called meeting to be in writing, yet such was contemplated by the Legislature, and the notice being verbal, it was therefore void, and all proceedings had pursuant thereto are void and of no effect. We know of no Kentucky case, and none is cited in brief, precisely in point with this question, except by analogy. In Burdine v. White, 173 Ky. 158, 190 S. W. 687, 689, notice is defined thus:

"Notice, generally, may be defined as that which imparts information of the fact to the one to be notified, and is divided by the law into several classes, such as actual, constructive, implied, and presumptive."

In 46 C. J., pp. 554, 555, sec. 54, it is said:

"The word 'notice' does not necessarily imply notice given in writing. When not otherwise required a verbal or oral notice may be sufficient, and as effective as a written notice, provided it conveys the necessary information. The fact that a personal notice is required does not necessarily mean that the notice must be in writing. The mere fact that the notice must be delivered does not require that it be in writing; * * * Sometimes a distinction is made between statutes requiring or authorizing notice in legal proceedings and statutes governing the transaction of other public business; and as to the former it is held that, unless the contrary appears, notice in judicial proceedings is to be construed to mean written notice, but as to the latter statutes it is held that the notice need not necessarily be written. * * *"

In the case of Gallagher v. School Township of Willow, 173 Iowa 610, 154 N. W. 437, there was involved a question similar to the one here, and it was held that

oral notice was sufficient. See, also, Brost v. Whitall-Tatum Co., 89 N. J. Law, 531, 99 A. 315, L. R. A. 1917D, 71.

In the case of Cones v. Brooks, 60 Neb. 698, 84 N. W. 85, 86, it is said:

"The statute does not require that the notice shall be in any specified form, or that it shall be given in any particular way, and we have no right to add anything to the law by construction."

Certain notices are required by our statute to be in writing, while no such requirement is expressly provided in respect to certain other notices, and had it been the intention of the Legislature that all notices should be in writing, evidently it would have said so, instead of leaving it to speculation and conjecture of the courts to guess whether or not the Legislature intended a notice to be in writing when it is silent on that question. As said in the Nebraska case, supra, "we have no right to add anything to the law by construction."

It is argued, however, that if it be conceded that oral notice was sufficient, it should have been delivered by the chairman of the board himself, instead of delegating this authority to Mrs. Stafford, the secretary of the board. But we are unable to see wherein any harm or prejudicial effect could result from the fact that the notice was conveyed to the members of the board by the secretary who was authorized by the chairman to do so, instead of in person by the chairman. In the case of Lauderback v. Multnomah County, 111 Or. 681, 226 P. 697, 701, in defining notice, it is said:

"Notice may, I think, be correctly defined as the information concerning a fact actually communicated to a party by an authorized person, or actually derived by him from a proper source."

However, the authorities of all jurisdictions are not in accord on this question. In the case of Burns v. Thompson, 64 Ark. 489, 43 S. W. 499, it is held that although the statute of that state is silent upon the question whether a notice of a called meeting of a municipal corporation shall be in writing, it was the opinion of the court that it was contemplated that such notices shall be in writing; and some other authorities are in accord with the Arkansas rule. But this rule seems to be contrary to the weight of authority, and, to our minds, contrary to a logical construction of the statute.

Our conclusion is that the notice was sufficient, and all the members of the board of the Wurtland school district were properly notified.

Lastly, it is insisted (a) that the merger was prompted by sinister motives on part of the Wurtland board, and (b) it is contrary to the best interest of the Wurtland district, and for these reasons the board exercised an abuse of discretion and its actions are void.

(a) It is a well-established rule that the courts will not consider motive which may have prompted an act done in the exercise of power conferred by law, subject, however, to rare exceptions hereafter to be noticed.

In the case of Consolidated School District of Glidden v. Griffin, 201 Iowa, 63, 206 N. W. 86, 87, the alleged motive for the action of the board in that case was the same as alleged here, which is indicated in the following quotation taken from that opinion:

"The right of the old directors to convene and transact the business of the district at the meeting of March 16, 1925, prior to the qualification of the newly elected members, is not denied. * * * Whether the action of the retiring members was in defiance of the will of the electors or discourteous, or whether they were forestalling the action of their successors, is not for our consideration. The only question before us is one of power."

Obviously, we have no power to consider the board's motive.

(b) With reference to the exercise of a discretion by a school board and other like boards, the courts will not interfere therewith, unless it is clearly established that there was an abuse of discretion and the accusers of such abuse have the burden of establishing it by clear and convincing evidence. It is insisted for appellees that the merger of the two school districts is harmful and detrimental to the best interests of the taxpayers and pupil children of the Wurtland district. The evidence on this point is somewhat conflicting, though the preponderance thereof seems to favor the merger. It appears that the Wurtland school is what is known as class B, while the Greenup county district maintains a class A school, and teaches certain important subjects that are not taught in the Wurtland school. L. N. Taylor, who was connected with the state department of education, testified that for more than two years he had

advised this consolidation and gives it at his best judgment that the interests of the districts are better served by the merger. Fred Maynard, superintendent of schools of Greenup county, and chairman of the Greenup county board of education, testified that he thought it for the best interest of all concerned, and gives many logical reasons for his opinion. Other members of the Greenup county board of education gave like testimony.

With respect to the relative financial conditions of the two boards, it is insisted that the Wurtland district has a well-equipped and a valuable school plant, all of which is paid for, and owes no debts; but the financial condition of the Greenup county district is not so favorable. There is no showing that the merger of the district would impose on the taxpayers of the Wurtland district a heavier burden of taxes than they have been paying. One condition precedent to the merger is that the Greenup county board of education will maintain a high school at Wurtland until July 1, 1938, and, of course, this will be at the expense of the county board instead of the Wurtland district as a separate unit.

It seems to be the spirit and intention of the new school Code to give school boards the authority to centralize by consolidation the various units of the educational system, thereby bringing them under one general management rather than maintain various independent schools or units under independent and separate heads, and in this respect it appears that the school boards are vested with quite a liberal discretion, more so than they formerly had. County Board of Education of Bath County v. Goodpaster, 260 Ky. 198, 84 S. W. (2d) 55.

True, it is, that if the high school at Wurtland should be discontinued after July, 1938, some inconvenience might result to the pupil children of the Wurtland district. But, on the other hand, the benefits derived from the merger may equal or exceed the minor disadvantages. It is our view that no legal reasons are shown why the proposed merger should not be carried into effect.

For reasons indicated, the judgment is reversed, with directions that upon a return of the case the chancellor will set aside the judgment, and for proceedings not inconsistent with this opinion.

The whole court sitting.