JOHN E. CULLUM, PLAINTIFF-APPELLANT, v. THE BOARD OF EDUCATION OF THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON, DEFENDANT-RESPONDENT.

Argued March 8, 1954—Decided May 3, 1954.

Mr. *Morton Isaacs* argued the cause for the appellant.

Mr. *Isadore Glauberman* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J.   This is an appeal, pursuant to certification granted under *R. R.* 1:10–2, from a judgment in favor of the defendant-respondent, originally rendered by the Commissioner of Education, affirmed without opinion by the State Board of Education, and affirmed by the Appellate Division in an opinion reported in *Cullum v. Board of Education of North Bergen Tp.,* 27 *N. J. Super.* 243 (1953).

Robert E. Madden, Superintendent of Schools for the Township of North Bergen, died on January 13, 1952. Three days later Stephen H. Magnus, president of the North Bergen Board of Education, Edith Beck, vice-president, and John Halligan and Edward H. Marck, members, met at luncheon and agreed that they would observe a 30-day mourning period before undertaking the task of selecting a new school superin-

tendent. George Eichler, the remaining member of the board, was informed of the agreement and acquiesced. North Bergen school principals who were interested in being considered for the appointment were told by the president and vice-president not to file applications until after the mourning period had expired.

Mr. Marck had been a member of the board for about nine months and his term was about to expire on January 31, 1952. He learned that he would not be reappointed and on January 20th he suggested to the president and vice-president of the board that the appointment of the superintendent be considered. They declined because of the mourning period. On January 23rd Township Commissioner Harry Buesser called upon James J. Goodman, secretary of the board, and asked that he call a special meeting; the request was refused on the ground that, under the board's resolution, special meetings were to be called only upon order of the president or upon written request of three members. Mr. Marck testified that he had asked the commissioner to obtain a notice from Mr. Goodman calling a special meeting for the purpose of appointing a superintendent. Vice-President Beck testified that on January 24th the commissioner asked her whether she would sign a request for a special meeting and threatened that her husband "would be out of a job" if she did not.

At about the same time Mr. Marck met the plaintiff John E. Cullum, a North Bergen school principal, and told him that he had better prepare his application for appointment as superintendent. Under date of January 24th the plaintiff addressed a letter application to the secretary of the board listing his qualifications and experience. On January 28th Mr. Marck visited the board's office and examined its records and resolutions with particular reference to the notice requirement for special meetings. As he was leaving, Mr. Goodman entered and although they exchanged greetings there was no discussion between them. Later that day Mr. Goodman went to Atlantic City, allegedly because of illness, and did not return home until Saturday night, February 2nd. On January 29th Messrs. Marck and Halligan went to the

board's office with a letter, signed by themselves and Mrs. Beck and addressed to Mr. Goodman, requesting that he call a special meeting for January 31st. Since Mr. Goodman could not be located the letter was left at his office and notices signed by Messrs. Marck and Halligan and Mrs. Beck were then served personally on Messrs. Magnus and Eichler. The notices stated that a meeting of the board would be held at the Assembly Chambers, Town Hall, on January 31st at 8 P. M. "for the purpose of considering the appointment of a Superintendent of Schools and for such other business as may come before said meeting."

During the afternoon of January 31st Messrs. Marck and Halligan called at the board's office and arranged to have a formal resolution typed; it named the plaintiff as superintendent of schools for the term of five years commencing January 31st at a salary of $7,500 for the first and second years, $8,000 for the third and fourth years and $8,500 for the fifth year. At 7 P. M. on January 31, 1952 Messrs. Marck and Halligan and Mrs. Beck met "in caucus" and at 7:55 P. M. they signed the resolution appointing the plaintiff as superintendent. At 8 P. M., in the presence of Messrs. Marck and Halligan and Mrs. Beck, the public meeting was called to order;. Messrs. Magnus and Eichler did not attend. Mr. Halligan acted as temporary chairman and after brief formal preliminaries the resolution was adopted without any discussion and above objection from the floor that the appointment was being made without its "consideration" as provided in the notice. In response to the objection Mr. Halligan stated: "We have met since 7:00 o'clock in caucus and we have decided who is the superintendent, so we are presenting to you now at 8:00 o'clock a resolution naming Mr. Cullum as Superintendent of Schools." Apparently the appointment had been decided upon and made without any examination whatever of any applications on file. Mr. Halligan testified that he had not even seen the plaintiff's application until a copy was handed to him on his way from the caucus to the public meeting. Mr. Marck testified that he never saw any applications; he acknowledged that although he had asked

the plaintiff to file a "resumé of his record" he at no time made any similar request or suggestion to other local school principals who were openly interested in being considered for the appointment and who had withheld their applications until expiration of the mourning period.

On February 1st the organization meeting of the board was held and was attended by all members, including Mr. Marck's successor. With Mr. Halligan and Mrs. Beck voting in the negative, a resolution was adopted declaring the position of superintendent of schools to be vacant and directing that the plaintiff's name as superintendent be removed from the board's records. On February 18th the plaintiff filed his petition with the Commissioner of Education seeking an order compelling the board to carry out the terms of the resolution which appointed him as superintendent. The Commissioner denied relief on the ground that since the board's secretary had not signed the notice the meeting of January 31st had not been legally called and that the appointment made was therefore invalid. The Appellate Division agreed that the meeting had not been legally called and affirmed the Commissioner's decision without finding it necessary to pass upon the additional grounds advanced by the board in support of its position that the appointment of the plaintiff was illegal and void.

R. S. 18:6-27 and R. S. 18:6-37 authorize the board to appoint a superintendent of schools for a term not to exceed five years; there are no express statutory provisions governing the meeting at which the appointment is made but the rules of the State Board of Education and the local board in North Bergen do embody provisions applicable generally to special meetings. See R. S. 18:6-19. Thus rule 136 of the State Board provides that it shall be the duty of the secretary of the local board to call a special meeting whenever he is requested to do so by the president or by a petition signed by a majority of the members of the local board. A rule of the local board provides that special meetings "shall be called on not less than twenty-four hours notice by the Secretary, in writing, upon the order of the President

or on the written request of three members of the Board." The purposes underlying this rule seem to be clear. The judgment as to when a special meeting shall be called rests entirely in the president or a majority of the board; if either the president or a majority of the board decides that a special meeting shall be called then it becomes the absolute duty of the secretary to call a special meeting on not less than 24 hours' notice. The secretary's call of the meeting pursuant to the president's order or the written request of the majority is ministerial and is in nowise discretionary.

When Mr. Marck delivered the duly signed request that a special meeting be called for January 31st Mr. Goodman, if he had been in his office, would have been obliged to comply forthwith. In fact, he had left his office without notifying anyone where he could be located but his absence could not effectively frustrate the wishes of the majority. Under the circumstances they had the clear right to perform the ministerial act of serving the notice. *Cf. Whipple v. Christie*, 122 *Minn.* 73, 141 *N. W.* 1107 (*Sup. Ct.* 1913); *Board of Education, etc. v. Stevens*, 261 *Ky.* 475, 88 *S. W.* 2d 3 (*Ct. App.* 1935). See also *Hicks v. Long Branch Commission*, 69 *N. J. L.* 300, 305 (*E. & A.* 1903). The vital thing was not the presence of the secretary's signature but the service of the notice in due and reasonable time on the other members of the board. The requirement that the notice be signed by the secretary, after his receipt of appropriate order or request, was directory rather than mandatory and may be considered to have been waived by the secretary's absence from town without notification of his whereabouts, whether by design or inadvertence. See *In re Norrell's Estate*, 139 *N. J. Eq.* 550, 553 (*E. & A.* 1947); *Sharrock v. Borough of Keansburg*, 15 *N. J. Super.* 11, 17 (*App. Div.* 1951).

Although the notice simply stated that the special meeting was being called for the purpose of "considering" the appointment of a superintendent, it was sufficient to advise that after consideration the appointment would be made. Such was its obvious purport and there is no dispute that it was so understood by the two members who absented themselves.

Their position was not that the appointment at the meeting was unanticipated; on the contrary, they have consistently asserted that the appointment had, in bad faith, been pre-arranged in disregard of the moratorium and without proper consideration of prospective applicants or the welfare of North Bergen's school system. It would seem clear that instead of boycotting the public meeting the minority should have attended it. But, be that as it may, there still remains for determination the controlling legal issue as to whether the manner in which the board majority exercised the power of appointing a superintendent constituted official action which was taken arbitrarily or in bad faith and should, therefore, be set aside under the wholesome principles recently restated by this Court in *Grogan v. DeSapio*, 11 *N. J.* 308, 325 (1953). There, three of the five city commissioners of Hoboken met in advance of the organization meeting and signed resolutions which allocated all the municipal functions with only skeletal powers and duties assigned to the absent minority. In setting aside the resolutions, which had been adopted at the organization meeting, this Court noted that there was evidence that the majority had not considered "the needs of the municipality" or "the economic administration of the government" or "the qualifications and experience of each commissioner," and that the record indicated "a lack of exercise of discretion and an arbitrary determination." Upon the showing in the instant matter we have reached a similar conclusion.

The members of the respondent board of education hold positions of public trust and must at all times faithfully discharge their functions with the public interest as their polestar. See *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, 474 (1952), *certiorari* denied 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952), rehearing denied 344 *U. S.* 888, 73 *S. Ct.* 181, 97 *L. Ed.* 687 (1952). Amongst their most vital and responsible duties is the proper selection of personnel, particularly the school superintendent. *Cf. Townsend v. School Trustees*, 41 *N. J. L.* 312, 313 (*Sup. Ct.* 1879). When Mr. Madden died they might forthwith have under-

taken the task of selecting a new superintendent. Instead they agreed to observe a 30-day mourning period and interested school principals were told not to file applications until its expiration. It may be assumed that the agreement was not legally binding and that Mr. Marck and his colleagues retained the right to call for earlier consideration of the matter. In such event, however, elemental good faith and fairness demanded that the interested principals be duly notified so that their applications might be filed and passed upon before a selection was made. Although Mr. Cullum was told by Mr. Marck to file his application in anticipation of the special meeting, he was the only prospective applicant who was thus favored.

The notices served by the majority on the minority members stated that a meeting of the board would be held at 8 P. M. for the purpose of considering the appointment of a superintendent. No notice of the preceding 7 P. M. caucus was ever served and it was not attended by the minority. It may fairly be inferred that no applicant, other than Mr. Cullum, was given any consideration by the majority at the caucus preceding the signing of the resolution at 7:55 P. M. When the 8 o'clock meeting was called to order, the resolution appointing Mr. Cullum was immediately presented as a *fait accompli.* Although the meeting had been called to *consider* the appointment of a superintendent, there were no deliberations whatever and the public had no timely opportunity to be heard on the matter. And although the minority members, if they had attended, would presumably have had opportunity to speak before the vote was taken publicly, they likewise would have been faced with the fact that the majority had, in advance, agreed upon the appointee and signed the formal resolution of appointment.

The circumstances convince us that there was, in the language of Justice Burling in the *Grogan* case, "a lack of exercise of discretion and an arbitrary determination." At no time did the majority consider the needs of the local community, or seek to ascertain and evaluate the identities, qualifications and experience of the available candidates, or

deliberate on the course best calculated to serve the local school system. On the contrary, they seem to have permitted extraneous personal and petty political influences to dictate their action. The open meeting they held was nothing more than a sham and as Judge Hartshorne suggested in *Grogan v. DeSapio*, 15 '*N. J. Super.* 604, 611 (*Law Div.* 1951), it ought be dealt with "as if it had never occurred." The Legislature has unmistakably and wisely provided that meetings of boards of education shall be public (*R. S.* 18:5-47); if a public meeting is to have any meaning or value, final decision must be reserved until fair opportunity to be heard thereat has been afforded. This in no wise precludes advance meeting during which there is free and full discussion, wholly tentative in nature; it does, however, justly preclude private final action such as that taken by the majority in the instant matter.

█ The lower tribunals made no findings, except as to the alleged insufficiency of the notice, and the proceedings might be remanded for that purpose. See *Delaware, L. & W. R. Co. v. City of Hoboken*, 10 *N. J.* 418, 425 (1952). But the issue is of public importance and its ultimate determination would be substantially deferred by such action. We have, therefore, carefully examined the full record and have made the independent findings embodied in this opinion. See *R. R.* 4:88–13. *Cf. Waldor v. Untermann*, 10 *N. J. Super.* 188, 191 (*App. Div.* 1950). Accordingly, the judgment invalidating the resolution appointing the plaintiff as superintendent of schools of the Township of North Bergen is:

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS, and BRENNAN—5.

*For reversal*—Justices HEHER and OLIPHANT—2.