65 N.J. Super. 68 (1961)
167 A.2d 39
FLORENCE S. EVAUL, PETITIONER-APPELLANT,
v.
BOARD OF EDUCATION OF THE CITY OF CAMDEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1960.
Decided January 6, 1961.
*70 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Meyer L. Sakin argued the cause for petitioner-appellant.
Mr. A. Donald Bigley argued the cause for defendant-respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
Appellant seeks to reverse the decision of the State Board of Education affirming, without written opinion, the decision of the Commissioner of Education which determined that respondent's acceptance of appellant's resignation as a high school teacher in the Camden public school system had legally terminated her employment on March 13, *71 1959. The State Board based its decision on the reasons expressed in the Commissioner's written opinion.
Appellant alleges that the document, which she had written and signed, and which had been accepted by respondent as her resignation, was not such in fact and, in any event, was void because she had not intended that it be considered as a formal declaration of the termination of her position as a teacher; that it had not been legally directed to or tendered to the respondent school board; and moreover was the "product of fraud, coercion and duress," to which she had been subjected by her superiors at a time when, to their knowledge, she was emotionally distressed. She further contends that the purported acceptance of her resignation at a special meeting of the school board was void as beyond the scope of the announced purpose of that meeting. The resignation was couched in the following language:
 "March 13, 1959
 Dr. A.R. Catrambone,
Because it seems impossible to resolve the false accusations, the misunderstandings, the attacks on my reputation (not my character), and the constant references to ridiculous stories of my past history, I hereby offer my resignation from the Camden School System. No one seems interested in clearing up these matters.
 Sincerely yours,
 Florence Smith Evaul"
Appellant had been a teacher in the Camden public school system since 1934. Although during her employment she had not been suspended and had not been the object of any formal charges, her superiors in the school system asserted that within the last few years she had exhibited a quarrelsome disposition; that certain irritating situations in connection with her work had arisen, which they attributed to lack of cooperation on her part, and which, they claimed, had caused disharmony in the school system. They contended that by March 1959 conditions had reached a point of such seriousness that a conference meeting with appellant was deemed imperative. Such a meeting, called *72 by the president of the school board, was held on March 13, 1959 at about 11:30 A.M. in the office of the principal of the high school in which appellant taught. In attendance were appellant, the principal, the superintendent of schools and the school board's president.
The meeting, lasting about 40 minutes, was an acrimonious one. It was concerned with a variety of subjects, including appellant's alleged quarrels with other teachers, the disrespect which, it was asserted, she had shown for the head of her department, her controversies with the principal of the high school and her criticism of the superintendent and of the school board's president. The record reveals that at times during the conference harsh words were spoken; that at times appellant appeared nervous, excited and distraught and once she cried; at other times she was calm; and, at still others, became extremely angry, at one point branding a statement by the principal as "a lie."
At the hearing before the Commissioner appellant testified that, although nervous while at the conference, she "was well aware of what was going on"; that immediately after the termination of the conference, she took charge of a study hall but felt "dazed"; that she was "shocked" by what had occurred and felt "discouraged" that she "couldn't convince" those at the conference "that there had been nothing wrong." At the conclusion of the study hour she sought a conference with the principal but found that he had left the building. She stated that she was crying bitterly at this point, and called her doctor and, on his advice, started for home. However, instead of going there, she stopped at the place of business of the school board's president and sought a conference with him. He refused to confer with her and, as related by her, voiced the opinion that at the morning conference, had he been her immediate superior, he would have suspended her "on the spot."
Appellant then went to the superintendent's office and conferred with him. She told him that she wanted to resign. She testified that despite the superintendent's twice-expressed *73 admonition that she "[t]hink it over until Monday" (March 16), she asked his secretary for paper and on receiving it wrote the aforesaid resignation in longhand and signed it. She admitted that in rejecting the superintendent's suggestion that she defer her decision she replied: "If I do, I'll change my mind." She testified that she was not threatened by the superintendent "in any way." She testified that her reason for her resignation was the "absence" of action in accomplishing things she wanted done. The conference then ended and, as the superintendent departed to go to another appointment, appellant left the resignation on a clerk's desk in his office.
Appellant's testimony at the hearing before the Commissioner was in sharp contrast with the statements contained in her petition of appeal to him and reiterated in her brief filed on her present appeal. In both of them she charged that duress, fraud and coercion were responsible for her act in penning the foregoing resignation. However, she testified that at the conference with the superintendent her mind was "clear" and that she knew what she was "doing"; that she was "calm," and that without assistance she "chose" her "own words" in phrasing her resignation. In explanation of her act she stated: "I was offering a resignation which could have been accepted or rejected, hoping that it would bring up a discussion before the Board of Education to find out why I would take such a serious step or even consider it * * *. I thought that any other request less than that would not seem serious enough for them [the board members] to discuss it. I was relying on the integrity of the Superintendent and the President of the Board to explain what had happened that day and why that letter was written."
Unknown to appellant, on March 10, 1959 a special meeting of the board of education had been called for 8:00 P.M. on March 13, 1959, pursuant to written notice sent by the board's secretary to each of its nine members. A copy of the notice and the clerk's certificate annexed thereto were received *74 in evidence before the Commissioner. They were as follows:
 "NOTICE
 March 10, 1959
There will be a Special meeting of the Board of Education held on Friday, March 13, 1959 at 8:00 P.M., in Room 503, City Hall, Camden 1, New Jersey.
The purpose of the meeting is to consider the following:
1. Final adoption of the 1959-60 budget.
2. Adoption of the Rules and Regulations.
3. Other matters that may come before the Board.

* * * * * * * *
It is certified that the above notice of Special meeting was given to each and every Member of the Board of Education of the City of Camden
 Joseph C. Ragone 
 Joseph C. Ragone
 Secretary
 Seal"
The meeting was attended by seven of the nine school board members. Many subjects were discussed and action taken thereon, the transcript of the minutes covering 25 typewritten pages. Appellant's resignation was presented by the superintendent and was accepted unanimously. On March 14 appellant noticed a newspaper reference to the meeting and, on calling the school board's secretary, learned that her resignation had been accepted the previous night. She testified that following a futile visit at the superintendent's home on March 15 she sent the following night letter to the respondent board:
"CAMDEN BOARD OF EDUCATION, ATTN JOSEPH RACONE SECY =
5TH FLOOR CITY HALL CAMDEN NJER = AM RESCINDING RESIGNATION OF MARCH FOURTEENTH BECAUSE OF ILLNESS AFTER FRIDAYS CONFERENCE I AM UNABLE TO REPORT ON MARCH SIXTEENTH WILL RETURN WHEN DOCTOR PERMITS =
FLORENCE S. EVAUL ="
Similar telegrams were sent by appellant to the superintendent and to the principal. Her attempted rescission of *75 her resignation was treated by respondent as ineffectual as the board had accepted her resignation and deemed that her status as a teacher in the city's school system had ended. Appellant was so advised by telegram on March 16. Her appeal to the Commissioner followed.
We find no merit in appellant's contention that the document she wrote, signed and left at the superintendent's office, was in fact not a resignation. Our conclusion flows not only from the unequivocal language used in the above quoted written resignation, but the record shows that the proposal originated with her and, as noted, that she expected that the school board might accept it or reject it.
Appellant places great stress on the fact that the superintendent in his testimony explained his suggestion to appellant that she think about her proposed resignation "over the week-end," by saying "I didn't think she meant it." The stress on this item of evidence loses whatever significance it may have had when it is realized that appellant immediately rejected any deferment of her resignation and insisted on writing it immediately. The school board accepted the resignation and the document cannot now be treated as a mere expression of a desire for a conference or as a conditional resignation or as a method employed by appellant to shock the school board into attention. Twice, as noted, she admitted that she refused to waver from her determination to present it. The record reveals that the superintendent testified that on five (not two) occasions during the conference he endeavored to have her defer any such action, but she remained adamant and persisted in presenting her resignation forthwith. Again, her testimony that she expected the school board to accept or reject her resignation is destructive of her present claim that she intended only to promote discussion. The Commissioner's determination that appellant's belated attempted rescission could not be deemed effective was sound.
Appellant further contends that her resignation was not legally effective because it was not "directed" to the *76 board of education or "tendered" to it. There is no merit to that contention. The resignation was addressed to the superintendent. It was appropriate that he should process it. Again, appellant's testimony that she expected that the board might accept it or reject it is irrefutable proof that she intended that it should be presented to the school board and acted upon by it.
Appellant next advances the contention that the school board's aforesaid acceptance of her resignation was invalid because of N.J.S.A. 18:13-20, which provides as follows:
"Any teacher, principal, or superintendent of schools, under tenure of service, desiring to relinquish his position, shall give the employing board of education sixty days' written notice of his intention, unless the local board of education shall approve of a release on shorter notice.
Any teacher failing to give such notice shall be deemed guilty of unprofessional conduct, and the commissioner may suspend his certificate for a period not exceeding one year."
Appellant contends that in the absence of specific waiver of the aforesaid 60-day provision the school board's action in accepting her offered resignation was a nullity. Not so. The Commissioner in his opinion noted that the obvious intent of the statute "is to guarantee the employing Board sixty days in which to arrange for suitable replacement." Its provisions are for the benefit of the board and the public, not the teacher. We agree with the Commissioner's statement that to hold that a teacher's resignation, once accepted, can be withdrawn within 60 days, destroys the purpose of the statute. The resignation when accepted was, as the Commissioner found, a "finality."
We also perceive no reason to disturb the State Board of Education's approval of the Commissioner's finding that appellant had failed to establish her claim that her resignation was the result of fraud, duress, or coercion.
Appellant's counsel contends in his brief that in the light of the heated morning conference with her superiors, the frustration which appellant felt, and her emotional state *77 engendered thereby, "the conclusion is inescapable that the paper writing was not a voluntary act proceeding from her own free will and not unconstrained by external emotional interference." He adds that "there is present the exaction of a paper writing under circumstances clearly demonstrating a lack of free will on the part of appellant * * *."
The Commissioner found to the contrary. He recognized that at the morning conference "undoubtedly some unpleasant and emotionally upsetting things were said," but that the proofs failed to sustain "any claim to a degree of provocation that could constitute duress or coercion."
Appellant cites Gobac v. Davis, 62 N.J. Super. 148 (Law Div. 1960), in support of her contention. The evidence in the record before us falls far short of the proofs which, in the cited case, led the court to the conclusion (at p. 160) that "the plaintiff was subjected to such psychological pressure and compulsion in the situation in which he found himself that it caused such fear on his part as to preclude the exercise by him of free will and judgment." The evidence in the case at bar not only fails to sustain such a contention but, as noted, the record includes strong affirmative proof that appellant's action was voluntary, was not the result of threats or coercion and reflected a course which, of her own choosing, she elected to pursue. The record is barren of any proof supporting the aforesaid contention of plaintiff's counsel that the resignation was exacted from appellant.
Appellant also cites the holding in Rubenstein v. Rubenstein, 20 N.J. 359, 367, 368 (1956), that the "act or conduct complained of need not be `unlawful' in the technical sense of the term; it suffices if it is `wrongful in the sense that it is so oppressive under given circumstances as to constrain one to do what his free will would refuse.' * * * [D]uress is tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim." The above quoted principle undoubtedly represents the law of this State but it has no application to the case at bar in which no claim is made that threats were employed to induce *78 the resignation. In our consideration of appellant's contention we have, as directed in Rubenstein, supra, at p. 367, considered the "age, sex, capacity, and relation of the parties and all the attendant circumstances." So assayed we find no justification for concluding, as contended by appellant, that psychological pressure constituting duress deprived her of the exercise of her free will.
Finally, we consider appellant's claim that the purported acceptance of her resignation was void because it was accomplished at a special meeting of the board of education called pursuant to a notice which did not include in the agenda specific notification of the presentation of such resignation.
The single question projected in this connection by appellant is whether the school board was within its rights in considering and accepting appellant's resignation as an item of business comprehended within the general language in the above quoted notice of the meeting that there would be considered "other matters that may come before the Board." The Commissioner, in rejecting appellant's contention and in affirming the propriety of the school board's consideration of appellant's resignation at the special meeting aforesaid, stated:
"In deciding questions of this kind which are not specifically covered by statute or rule, great weight must be given to custom and prevailing practice. It is evident that the Camden City Board of Education has followed a practice of holding special meetings between the regular monthly meetings for many years and has customarily transacted miscellaneous items of business under such a general purpose notice as in the instant case. The minutes of the particular meeting in question show that a number of items, other than the two specifically listed, were acted upon. These included correspondence, payment of bills, award of a construction contract, appointment of a committee, authorization of a request of the Business Manager, as well as petitioner's resignation. That this has been a regular practice of the Board and that all members were well aware of it and accepted it cannot be doubted.
The Commissioner has knowledge also, that this custom is not peculiar to the Camden City Board of Education, but is the general practice of many boards of education in New Jersey, particularly in the larger districts where the volume of business to be acted upon *79 requires meetings of more frequency than once a month. For many years boards of education in this State have been inserting in the call of a special meeting some such omnibus clause as the one in question to permit them to dispose of miscellaneous items of business accumulated since the last meeting. In sanctioning this practice, the Commissioner believes that it has not been and should not be extended to cover major decisions of policy on which the public might wish to be heard, but should be limited to action upon routine items that need not wait until a regular meeting."
We are in accord.
Appellant contends that the consideration of her resignation was not a "routine" matter and that the board's acceptance thereof, in the absence of express reference thereto in the call of the meeting, was void. She urges that the inclusion of the word "teacher" in association with the word "superintendent" in N.J.S.A. 18:13-20, supra, when considered in the light of the importance attributed to the position of superintendent in Cullum v. Bd. of Education of Tp. of North Bergen, 15 N.J. 285 (1954), is confirmation of the importance of the subject of a teacher's resignation and refutes the suggestion that it can ever be labelled "routine." She stresses particularly the importance of the statement found in Cullum, supra, at p. 292, to the effect that: "Amongst their [members of a board of education] most vital and responsible duties is the proper selection of personnel, particularly the school superintendent."
There can be no proper challenge of the propriety of the above quoted statement. It is equally apparent that it has no application to the factual situation present in the instant case. We are not here dealing with the selection of a superintendent or of a teacher. We have before us the simple question whether a signed resignation of a teacher in a public school system may be considered and acted upon at a special meeting of the school board even though such projected item of business was not specifically listed in the meeting's call. In other circumstances or with a different factual background, it might well be that a teacher's resignation would loom so large, as a public issue, as to require specific *80 notice if its consideration were to take place at a special meeting. No such element is here involved. Despite the aforesaid events of the morning and afternoon of March 13, 1959, the resignation of appellant, as it came to the school board through the medium of the superintendent's report, was a routine matter and not such as to require specific inclusion of its consideration in the call of the special meeting.
The judgment of the State Board of Education is affirmed.
SULLIVAN, J.A.D. (dissenting).
I am unable to subscribe to the majority ruling affirming the decision by the State Board of Education that petitioner's employment by the Board of Education of the City of Camden was legally terminated by her so-called offer of resignation and the acceptance thereof. Petitioner had been a teacher in the Camden public school system for 25 years and had commensurate seniority, pension and tenure rights. I cannot agree that all of this should be lost to her by the events which took place.
The pertinent facts are fully set forth in the majority opinion and no purpose would be served by repeating them although I do consider it important to note that the summons to petitioner to report to the principal's office came to her without any advance notice of what it was about, or who would be there. As a matter of fact, the principal of her school, the superintendent of schools and the president of the board of education were waiting for her and they proceeded to dress her down and to confront her with a variety of accusations of disrespect, criticism of superiors, quarrelsomeness and the like. That petitioner became nervous, excited and distraught and even cried is understandable. The sequence of events thereafter all evidenced growing symptoms of shock, frustration and despair in petitioner, so that when the so-called offer of resignation was penned, her physical and mental condition was such that, while she may have been conscious of her actions, she really did not comprehend or understand what she was doing.
*81 I am not impressed by her failure to follow the superintendent's repeated admonition to think it over. He admitted that he "didn't think she meant it" and if, as I believe, she was unable to weigh the consequences of what she was doing, how could she be charged with having failed to heed his advice?
All she was seeking was a hearing so that she could answer the charges that had been levelled against her, and in her confusion she thought that what she was doing would accomplish that result. She so testified, and I am satisfied from the events that took place and the context of the purported offer of resignation, that the board must have understood petitioner's real purpose.
Instead, the board seized upon what it considered a fortuitous circumstance to rid itself, without the necessity of any hearing, of an employee whom it considered to be a troublemaker. That was the real reason behind the board's precipitous action and because, in the overall picture, this was not a bona fide acceptance of a bona fide offer of resignation, I would rule that the termination of petitioner's employment was invalid.
It may be that petitioner is a troublemaker and a detriment to the system. If so, the board is not without recourse.