89 N.J. Super. 327 (1965)
215 A.2d 35
GEORGE I. THOMAS, PETITIONER-APPELLANT,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF MORRIS, IN THE COUNTY OF MORRIS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1965.
Decided November 16, 1965.
*329 Before Judges SULLIVAN, LEWIS and KOLOVSKY.
Mr. Abraham Natovitz argued the cause for appellant.
Mr. Bertram Polow argued the cause for respondent.
The opinion of the court was delivered by SULLIVAN, S.J.A.D.
This is an appeal by Dr. George I. Thomas, petitioner herein, under R.R. 4:88-8, from a final decision of the State Board of Education upholding the action of the respondent Board of Education of the Township of Morris (board) terminating petitioner's employment as superintendent of schools.
On December 14, 1960 the board, after the careful screening of some 40 applicants, by unanimous vote selected Dr. Thomas as its superintendent of schools and entered into a two-year contract of employment with him commencing February 1, 1961. The contract provided that either party could terminate it prior to expiration by giving 90 days' notice in writing. This contract did not give Dr. Thomas tenure, the two-year term thereof in effect being a probationary period.
On October 18, 1961, at a regular meeting of the board, the majority bloc of five members adopted a resolution under which the two-year contract was cancelled, and Dr. Thomas was given a three-year contract of employment from said date without any termination provision. The effect of the new contract was to clothe Dr. Thomas with tenure.
*330 Said action was taken without prior notice to the four other board members or the public. It appears, however, that the matter had been privately discussed in advance by the members of the majority bloc and by Dr. Thomas. Indeed, a statement extolling Dr. Thomas' accomplishments as superintendent of schools, which statement was read at the meeting, the resolution cancelling the old two-year contract and providing for a new three-year contract, and the three-year contract itself, were all prepared in advance of the October 18 meeting.
At said meeting, after the statement praising Dr. Thomas' accomplishments had been read and the resolution introduced, the two minority bloc members of the board who were present (two others were absent) protested strongly against the proposed contract. One said:
"This action is premature. We are not well enough acquainted with Dr. Thomas, with his attitudes or abilities in relation to this community. We should not jump to conclusions. Every employee should have a full trial period."
The other added:
"This is a high-handed way to tie us up. It is most premature. It should have been discussed prior to this with all Board members. I certainly have some unanswered questions regarding Dr. Thomas. This gives him automatic tenure."
Without further discussion the question was moved and adopted by a 5-2 vote.
During the course of the meeting another member of the board arrived, and when informed of what had transpired with regard to Dr. Thomas, said:
"It would have been a courtesy for the Board to have had an opportunity to discuss this matter in a conference session, as I was not aware it was coming. I believe it was wrong to do it at this time and I am absolutely opposed to it."
The three-year contract which, as heretofore noted, had been prepared in advance, was signed by Dr. Thomas and the president and secretary of the board during the meeting.
*331 A few months later, in February 1962, the terms of office of three members of the majority bloc expired. They stood for reelection but were defeated, whereupon the two remaining members of the former majority bloc resigned from the board. At its regular meeting on March 21, 1962 the new board unanimously adopted a resolution which, after reviewing the circumstances surrounding the October 18, 1961 action cancelling Dr. Thomas' original two-year contract and entering into a three-year contract with him, declared said action to be against public policy, invalid and of no force and effect. The resolution further stated that the new board recognized the original two-year contract with Dr. Thomas, expiring February 1, 1963, as the only valid and subsisting contract. Dr. Thomas, who was present at the meeting, made a statement that he had accepted the three-year contract in good faith because of the protection it afforded him, and he expected the board to "live up to" the new contract.
On June 21, 1962, at a regular meeting of respondent board, a resolution was unanimously adopted exercising the 90-day clause contained in the original two-year contract and terminating Dr. Thomas' employment as superintendent of schools.
Dr. Thomas appealed from respondent board's action to the Commissioner of Education. The matter was presented on petition, answer and stipulation, no oral testimony being offered. The Commissioner upheld the board's position that Dr. Thomas' three-year contract was invalid and that the only legal contract between the parties was the original two-year contract. In so ruling, the Commissioner found in the action taken by the board at the October 18, 1961 meeting "clear indication of the kind of private, final action, without full and open consideration and discussion, with timely opportunity for all members of the board and the public to be heard, which the Court condemned in Cullum [Cullum v. Board of Education of North Bergen Township, 15 N.J. 285 (1954)]."
A further appeal was taken by Dr. Thomas to the State Board of Education, which affirmed the Commissioner's decision, *332 holding that under the circumstances presented the October 18, 1961 action of the board was shown to be an abuse of discretion, arbitrary and contrary to public policy. The instant appeal followed.
The sole contention by Dr. Thomas on this appeal is that all of the evidence shows that the three-year contract of October 18, 1961 was a valid contract, validly entered into, so that the decision of the State Board of Education upholding respondent board's termination of petitioner's employment must be reversed.
We are here concerned with a determination made by an administrative agency duly created and empowered by legislative fiat. When such a body acts within its authority, its decision is entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbitrary, capricious or unreasonable. The agency's factual determinations must be accepted if supported by substantial credible evidence. Quinlan v. Board of Ed. of North Bergen Tp., 73 N.J. Super. 40 (App. Div. 1962); Schinck v. Board of Ed. of Westwood Consol. School Dist., 60 N.J. Super. 448 (App. Div. 1960).
In the instant case our review of the entire record leads us to conclude that the State Board's determination as to the invalidity of the October 18, 1961 three-year contract is amply supported by substantial credible evidence.
A review of the essential facts and the inferences reasonably to be drawn therefrom is in order.
The selection of Dr. Thomas as superintendent of schools was the result of six months of investigation and deliberation by respondent board. Some 40 applications were screened and personal interviews had with those considered the most qualified. After careful consideration of all of the information collected, Dr. Thomas was selected. Even then, the board was unwilling to enter into a contract of employment with Dr. Thomas which would have given him tenure, but rather employed him on a probationary basis of two years. Undoubtedly, *333 the board wanted to reserve to itself the right to consider Dr. Thomas' actual performance as superintendent of schools during the probationary period before committing itself to a tenure appointment. This arrangement was in effect a policy decision made by unanimous vote of all board members.
The action taken by the board on October 18, 1961 represented a dramatic change in that policy by reducing the probationary period to 8 1/2 months. No prior notice of the proposed change was given to board members or to the public, which likewise had been led to believe that a decision as to whether or not Dr. Thomas should be given tenure employment would be made only after a two-year probationary period.
The resolution of October 18, 1961, which gave Dr. Thomas tenure employment, manifestly had been privately discussed in advance by at least some of the members of the majority bloc and by Dr. Thomas. The preparation in advance of the meeting of the statement extolling Dr. Thomas' accomplishments, the resolution in question and the three-year contract of employment, indicate that the matter had been carefully planned.
The impact that the resolution had on the other board members present can best be judged by the comments made. One member said that the action was premature because the board was not well enough acquainted with Dr. Thomas' attitudes and abilities, and that the full trial period should expire before a decision was made giving tenure to Dr. Thomas. Another member echoed the same sentiments, adding that he had some unanswered questions regarding Dr. Thomas.
Despite the foregoing and, so far as the minutes of the meeting show, without affording an opportunity to the minority to even state what their unanswered questions regarding Dr. Thomas were, the motion was adopted by majority vote.
The modus operandi suggests that the real reason for the October 18, 1961 resolution was that the members of the majority bloc, mindful of the coming election, decided to give *334 Dr. Thomas tenure while they could, even though it meant shortening his probationary period by almost two-thirds.
True, the action was taken at a regular public meeting of the board. It is also true that no statute, administrative rule or regulation requires the giving of notice to board members, or to the public, of matters to be considered at such a meeting. It may even be assumed that the members of the majority bloc acted in the honest belief that it was in the best interests of the educational system to give Dr. Thomas tenure employment.
However, as heretofore noted, the fact is that the action taken represented a drastic modification of a policy decision which had been previously made by the board after the most careful and deliberate consideration. The change was effected by a majority bloc of five members, three of whom were serving terms that were to expire within a few months. The matter was privately discussed and planned in advance, but notice thereof was withheld from the other board members and the public. When the proposal was unveiled at the meeting, although the members of the minority bloc present objected and stated that they had some unanswered questions regarding Dr. Thomas, it does not appear that they were even allowed to state what those questions were before the resolution was put to a vote and adopted.
The controversy here concerns the legality of the tenure employment of a superintendent of schools. This is one of the most vital and responsible duties that a board of education can perform. Cullum v. Board of Education of North Bergen Township, supra, 15 N.J., at p. 292. The original selection of Dr. Thomas in December 1960 indicates that the board recognized the importance of its action and acted accordingly. On the other hand, the October 18, 1961 episode, no matter how well intentioned, inasmuch as it involved a change in board policy in such a vital matter, lacked the essential elements of notice, deliberation and fair opportunity to be heard. In short, the action was not taken in good faith. As noted in Cullum, at p. 294, "if a public meeting is to have *335 any meaning or value, final decision must be reserved until fair opportunity to be heard thereat has been afforded."
We conclude that there was substantial credible evidence in the totality of facts and circumstances from which the State Board could have reasonably found that the October 18, 1961 action taken by the board was an abuse of discretion, arbitrary and contrary to public policy.
Our dissenting colleague questions the procedure whereby the October 18, 1961 resolution and contract were declared invalid. This issue has not been raised by Dr. Thomas on appeal to this court. However, we conclude that, under the circumstances presented, the new board acted promptly and expediently to clarify Dr. Thomas' employment status and that no legal prejudice to him resulted. He was told by the new board that it recognized the original two-year contract, which still had almost a year to run, as the only valid and subsisting contract. It is his challenge of that declaration of status that necessarily involves the issue of the validity of the October 18, 1961 resolution and contract.
Affirmed.
KOLOVSKY, J.A.D. (dissenting).
The proceedings under appeal were not instituted to attack the validity of the October 18, 1961 resolution of the township board of education (board) and the contract between Dr. Thomas and the Board authorized thereby. On the contrary, the proceedings were instituted by Dr. Thomas in July 1962 for administrative review of the validity of two resolutions adopted by the board on March 21, 1962 and June 21, 1962, respectively. The resolution of March 21, 1962 purported to determine that the contract of October 18, 1961 between the board and Dr. Thomas, and the board's resolution which authorized it, "are against public policy, invalid and of no force or effect," and that the board would recognize only the December 15, 1960 contract. The June 21, 1962 resolution purported to exercise a 90-day termination option contained in the December 1960 agreement.
*336 In my opinion, neither of the 1962 resolutions was valid and Dr. Thomas should have been given the relief which he prayed  an order so declaring.
It was not for the board to pass in judgment, as it did in adopting its resolution of March 21, 1962, upon the validity of the October 18, 1961 resolution. Montefiore Cemetery Co. v. Newark, 3 N.J. Misc. 1100, 130 A. 730 (Sup. Ct. 1925); First National Bank of Fort Lee v. Englewood Cliffs, 123 N.J.L. 590, 594 (Sup. Ct. 1940).
As the court said in the First National Bank case:
"We are entirely satisfied that the resolution of October 13th, 1938 is invalid and should be set aside. This resolution merely rescinded a prior resolution under date of July 8, 1937. If the prior resolution was valid, and we are not to be understood as expressing any opinion on this score, prosecutors `acquired vested rights thereunder which could not be taken from [them].' [Citing cases] And if, on the other hand, as respondents contend, the prior resolution was invalid, on which question as already indicated no opinion is expressed, `it was not for the municipality to pass judgment upon its own act.' [Citing cases] In either circumstance, therefore, the resolution presently under attack, must fall." (at p. 594)
As is true with respect to private parties, a municipal corporation cannot rescind or dissolve an existing contract binding upon it merely by adopting a resolution to that effect. See Borough of East Rutherford v. Sterling Paper, 21 N.J. Misc. 232, 236, 32 A.2d 855, 857 (Cir. Ct. 1943); Buckley v. Mayor, &c., of Jersey City, 105 N.J. Eq. 470 (Ch. 1930) affirmed o.b. 107 N.J. Eq. 137 (E. & A. 1930).
The resolution adopted by the board at the October 18, 1961 meeting provided for the termination of the existing employment agreement of December 15, 1960 and the substitution therefor of a new three-year contract. It is undisputed that the action taken was within the statutory power granted to a board of education which may employ a superintendent for a term not to exceed five years. N.J.S.A. 18:7-70. The October 18, 1961 contract was not void. It was binding upon both the board and Dr. Thomas until avoided for good and sufficient legal reasons in proceedings brought for that purpose.
*337 But no proceedings of any kind were taken to review the validity of the resolution and contract of October 18, 1961. Such review was available by appeal to the Commissioner of Education under N.J.S.A. 18:3-14. Although the statute has no provision as to the time within which the appeal to the Commissioner should be taken (compare with N.J.S.A. 18:3-15 providing that appeals from the Commissioner to the State Board are to be taken within 30 days), it is clear that "this statutory protection [should] be invoked with reasonable promptitude." Board of Education of Garfield v. State Board of Education, 130 N.J.L. 388, 393 (Sup. Ct. 1943).
If the minority of the board or any affected citizen desired to attack the validity of the board's action, they should have proceeded to do so promptly. On the record before us, nothing was done. Such failure is not to be overlooked because an annual election for some of the members of the board was to be held some four months later. The legality of municipal action is to be determined by applicable rules of law; it is not to be tested by the results of the next election.
Nor did the time for review of the prior resolution of the board begin to run anew because of the change in the board's membership. In any event, altogether apart from the question of delay or laches, if the new board was of the view that the action taken some five months before was invalid for any reason, it should have with "reasonable promptitude" sought to have it judicially annulled, cf. Marini v. Wanaque, 37 N.J. Super. 32, 40 (App. Div. 1955), instead of proceeding without notice to Dr. Thomas, cf. Nicholson v. Board of Education, Swedesboro, 83 N.J.L. 36 (Sup. Ct. 1912), to attempt to destroy existing contract rights.
However, the validity of the agreement of October 18, 1961 and of the resolution of the board authorizing it becomes an issue in this case because the parties stipulated that one of the "legal issues before the Commissioner" was "Is the contract of October 18, 1961, a valid contract, validly entered into?"
*338 As to this issue, the majority opinion concludes that:
"there was substantial credible evidence in the totality of facts and circumstances from which the State Board could have reasonably found that the October 18, 1961 action taken by the board was an abuse of discretion, arbitrary and contrary to public policy."
I cannot agree.
The only relevant evidence before the Commissioner and the State Board on the issue of the alleged invalidity of the October 18, 1961 agreement, an issue as to which the burden of proof was on the board, were the minutes of the local board's meetings of December 14, 1960 and October 18, 1961, the employment contracts of December 15, 1960 and October 18, 1961, and the stipulation that Dr. Thomas would "be unable to disprove the contention of three members of the Board of Education that they had no prior knowledge of the resolution of October 18, 1961, or that it would be presented for consideration that evening." The self-serving statements and recitals in the board's resolution of March 21, 1962 were neither competent nor relevant evidence on this issue.
There was no oral testimony requiring factual determinations by the administrative agency which normally we would be required to accept. The Commissioner and the State Board were in no better position than are we to evaluate the written evidence. Cf. 5A C.J.S., Appeal & Error, § 1656 (2), p. 442.
In its conclusions, the State Board said:
"While we agree that the facts herein are distinguishable from those in Cullum, we nevertheless feel that the basic philosophy of that case well supports an invalidation of the action taken by the local Board on October 18, 1961. * * *
In any event, we hold that under the circumstances here, where the local Board undertook to invalidate the previous contract, in dealing with a position such as the superintendency wherein it performed one of its `most vital and responsible duties,' Cullum, supra, the Board acted contrary to public policy in not informing all members of the Board that the matter would be considered at the meeting of October 18, 1961. In other words, there was such an abuse of discretion and arbitrary action as to invalidate the action taken."
*339 In my opinion, the State Board's determination is not supported by the evidence nor by Cullum v. Board of Education of North Bergen Township, 15 N.J. 285 (1954). Further, while notice of a special meeting must state the purpose for which the special meeting is called, 4 McQuillan, Municipal Corporations (3d ed. 1949), § 13.37, there is no authority which supports the board's ruling that notice should have been given of the items to be taken up at a regular meeting of the board; and, as the majority opinion points out, "no statute, administrative rule or regulation requires the giving of notice to board members or to the public of matters to be considered at [a regular] meeting."
As I read Cullum, neither its philosophy, its factual complex nor its holding warrant invalidating the October 18, 1961 resolution and contract.
Unlike Cullum, the instant case does not involve a "lame duck" appointment. Cf. Higgins v. Denver, 85 N.J. Super. 277 (App. Div. 1964). Here the annual school board election was not to be held until February 1962, four months later. There the appointment was initiated by a board member whose term expired on the very day of the special meeting at which the appointment was made. "[T]he appointment [of Cullum as superintendent] had been decided upon and made without any examination whatever of any applications on file." 15 N.J., at p. 289. And as the Supreme Court commented:
"* * * elemental good faith and fairness demanded that the interested principals be duly notified so that their applications might be filed and passed upon before a selection was made. Although Mr. Cullum was told by Mr. Marck to file his application in anticipation of the special meeting, he was the only prospective applicant who was thus favored. * * *
And although the minority members, if they had attended, would presumably have had opportunity to speak before the vote was taken publicly, they likewise would have been faced with the fact that the majority had, in advance, agreed upon the appointee and signed the formal resolution of appointment.
The circumstances convince us that there was in the language of Justice Burling in the Grogan case [11 N.J. 308], `a lack of exercise of discretion and an arbitrary determination.' At no time did the *340 majority consider the needs of the local community, or seek to ascertain and evaluate the identities, qualifications and experience of the available candidates, or deliberate on the course best calculated to serve the local school system. On the contrary, they seem to have permitted extraneous personal and petty political influences to dictate their action. The open meeting they held was nothing more than a sham." (at p. 293)
Here, the stipulated record discloses a completely different atmosphere. The board had, prior to the original appointment of Dr. Thomas on December 14, 1960, made a thorough survey of some 40 applicants for the position of superintendent, had interviewed eight and had finally selected Dr. Thomas. His original contract provided for a two-year period during which either party might terminate the contract on 90 days' notice. A decision by the board as to whether it was to the school system's best interests to continue to have the benefit of Dr. Thomas' services as superintendent of schools did not have to await the expiration of the two-year term. If the board was not satisfied with Dr. Thomas' performance, it could have terminated the contract on 90 days' notice at any time within the two-year period, just as Dr. Thomas might have done if for any reason he concluded that he would be happier elsewhere. Similarly, there was no obstacle to the board's determining before the expiration of two years that Dr. Thomas' performance was such that it should insure that he would stay on without an option to cancel, nor to its effecting that result by providing for a cancellation of the original contract and the substitution of a contract without any right of termination by either party.
The evidence in this case is uncontradicted that the majority of the board, unlike the majority in Cullum, was concerned "with the needs of the local community" and selected a course which they believed "best calculated to serve the local school system." So the chairman of the education committee stated that he
"had worked closely with Dr. Thomas for many months now and has come to know him well and to recognize that he is a most diligent worker"; *341 and that while it was he who had on December 14, 1960 moved that Dr. Thomas be employed for two years,
"I have now seen enough of his work and what he can do that I have asked Mr. Mills [the board's attorney] to prepare the following resolution which I wish to move."
There is nothing in the record to contradict the statement read by the president of the board listing the many accomplishments of the superintendent of schools since he had taken over.
That the minority argued that a long enough trial period had not elapsed does not affect the determination of the majority that it had. There has been no showing of fraud or bad faith. Nor is such an inference to be drawn from anything in the record. Indeed, "when the proved or admitted facts are consistent with any reasonable theory of good faith and honest intent, they should be so construed." 37 C.J.S., Fraud, § 115, p. 438; see also Federal Reserve Bank of Phila. v. Godfrey, 120 N.J. Eq. 203, 206 (E. & A. 1936).
That, as is evident, some members of the majority had discussed the proposed action before the meeting but had not notified the minority that the proposal would be considered at the meeting does not, in my opinion, justify a finding that, in fact, the majority had reached private agreement  that "private final action" had been taken prior to the meeting. Such preliminary discussion is not prohibited. Cullum, supra, 15 N.J., at p. 294. Nor is there any bar to the preparation in advance of a proposed resolution and contract. Many resolutions are prepared prior to and introduced at municipal meetings; not all are adopted.
I would reverse the decision of the State Board and direct that judgment be entered vacating the local board's resolutions of March 21, 1962 and June 21, 1962.